CRONENWETT v. BOSTON & A. TRANSP. CO.

(Circuit Court, D. Washington, N. D. June 26, 1899.)

MARITIME LIENS—INSOLVENCY OF OWNER—EFFECT OF RECEIVERSHIP—PROCEEDS OF INSURANCE.

Where a court of equity, by its receiver, has taken possession of a vessel in proceedings against the insolvent owner, thus rendering it impossible for the holders of maritime liens against the vessel to enforce the same by proceedings in rem in a court of admiralty, and the vessel during a voyage on which she is sent by the receiver is wrecked, the insurance placed thereon by the receiver and collected by him after her loss will be treated as standing in place of the vessel, and will be disbursed in the same manner as though it were the proceeds of the vessel; the creditors entitled to maritime liens being first paid therefrom.

Suit in equity by creditors against an insolvent steamship company. Hearing on application of the receiver of the defendant corporation for an order to disburse money collected upon an insurance policy covering a steamship lost while prosecuting a voyage upon which she was dispatched by the receiver.

Wm. H. Gorham, for receiver.

J. H. Allen, John B. Allen, and Richard A. Ballinger, for preferred creditors.

Fred Bausman, for general creditors.

HANFORD, District Judge. The defendant corporation, while carrying on a general transportation business, and having possession of and operating ocean-going steamships and river boats between Seattle and points in Alaska, and upon the Yukon river, and after having incurred a large number of debts in the conduct of said business, became unable to maintain itself as a going concern, and in consequence this suit was commenced, and at the instance of the plaintiff this court appointed a receiver to take charge of said corporation and possession of all its assets, and authorized said receiver, so far as practicable and for the best interests of all concerned, to complete the performance of contracts for the transportation of freight and passengers which said corporation had undertaken, and, so far as it could be done without special danger of sacrificing the assets of the corporation, to continue the operation of said vessels. At the time of appointing the receiver, the steamship Brixam, then owned by the defendant corporation, was at sea on her return passage to Seattle from St. Michaels, in Alaska, and immediately upon her arrival within the jurisdiction of this court the receiver took her into his custody. At that time the Brixam was subject to maritime and statutory liens for mariners' wages earned by her crew upon her voyage from Seattle to St. Michaels and return, and for supplies and materials furnished in this state, and which were necessary to furnish and equip her for said voyage, and her owner, the Boston & Alaska Transportation Company, was also indebted generally on account of a great variety of transactions. Those creditors entitled to proceed in rem against the Brixam in a court of admiralty, by reason of having maritime liens upon said vessel, were hindered and

prevented from proceeding in that manner to collect the money due to them, because, while the vessel was in the custody of the receiver appointed by this court, she could not be seized by the marshal, and it was impossible for a court of admiralty to obtain jurisdiction. While they were thus restrained, the receiver, believing that it would be for the advantage of all concerned, and benefit the estate, dis-patched the Brixam on another voyage to ports in Alaska, and while on this voyage she was wrecked and became a total loss. Previous to sending her away, however, the receiver obtained a policy of marine insurance upon the vessel in the sum of $40,000, and, having no money on hand with which to pay the premium for said policy, he obtained credit for the amount of said premium upon a certificate of indebted-ness which he issued. The loss having been adjusted, there was paid to the receiver, on account of said policy, the sum of $33.876.88, being the net amount due upon the policy after deducting the amount of the receiver's certificate issued in payment for the premium, and certain other deductions which the receiver had to allow in order to collect the insurance money without litigation. The receiver has ap-plied to the court for an order authorizing the payment, out of the in-surance money so received, of the sums due to the seamen who served on board the Brixam for their unpaid wages, and otherwise to dis-burse the funds according as the court shall find the priorities and rights of the different creditors. The various creditors have appeared before me, some supporting, and others opposing, this application made by the receiver, according as their interests lie. Creditors op-posing the allowance of any preference to those creditors who were entitled to claim maritime liens upon the Brixam have cited the deci-sion of this court in the case of The Rapid Transit, 52 Fed. 320, and the supreme court decisions which were therein followed, holding that a policy of insurance in favor of the owner of a vessel is a collateral contract, and that, in case of loss, the insurance money does not become a substitute for the vessel, and that the insurance is not any part of an owner's interest in a ship. That rule, having been estab-lished by a line of decisions of the supreme court, must be applied in all cases wherein the res or subject of litigation consists of the prop-erty or interest of an owner in a ship. But in this case I hold that, consistently with the principles of equity, the receiver took the Brixam into his custody as the representative, not only of her owner, but of all creditors as well, and that existing maritime liens are not to be deemed to have been destroyed; for it was the duty of the court to protect all creditors in their rights, and to preserve, as far as pos-sible, existing liens. Pratt v. Coke Co., 168 U. S. 259, 18 Sup. Ct. 62. It is contrary to the most elementary principles to presume that a court of equity will extend its jurisdiction over property as a shield against judicial process, and then consume the property, or expose it to destruction, without in any way making provision for compensating the creditors who may be defeated. I hold that the receiver took the policy of insurance on the steamer Brixam, not as owner, nor for the benefit of the owner, but as in duty bound he obtained the insurance for the benefit of the owner and creditors, according to their respective interests. The vessel having been lost and all mari-

time liens upon her thereby extinguished, the court must now face the creditors who were entitled to enforce maritime liens against her before she was sent away on her fatal voyage, and say to them: "We have devested you of your rights by the mere exertion of power, and you must submit to the deprivation of your rights merely because the court has the power to trample upon them, and has seen fit to exert that power at the instance of other creditors, whom the law has not regarded with such favor as to give them liens of equal rank, or else the insurance money which has come into the hands of the receiver, as the consequence of the loss of the steamship and the destruction of the maritime liens upon her, must be applied first to the payment of the debts which were secured by those liens." In my opinion, the latter alternative is consonant with the rules of equity practice, and the first is not. A decree will be entered directing the receiver to disburse the insurance money in practically the same manner as if it had come into his hands as the proceeds of the sale of the vessel.