# Pramuk's Appeal.

*Corporations — Receiverships — Compensation of receiver — Improper payments—Wage claims—Act of May 12, 1891, P. L. 54, Section 1—Surcharge.*

1. A receiver is an officer of the court; and, by accepting such an appointment, he accepts the responsibility of his office, which involves the exercise of his best business experience and influence for the benefit of the company, in the same manner as if he were the sole owner of the business. For these services the law recognizes the justice of compensation measured by the circumstances of the case. Beyond such compensation the receiver may not profit by his position to the detriment of the creditors or owners of the business.

2. The Act of May 12, 1891, P. L. 54, Section 1, which provides that money due for labor and services for an amount not in excess of $200 and for a period not exceeding six months preceding the sale or transfer of the real or personal property of any person or company by execution or otherwise on account of the death or insolvency of such employer or employers, shall be first paid out of the proceeds of the sale of such real and personal property, does not authorize the payment of wages as a preferred claim unless a sale of the property has taken place.

3. Where a receiver has been authorized to conduct the business of a corporation, but before the sale of the property the corporation has been adjudged a bankrupt and its property has passed into the hands of a trustee in bankruptcy, the receiver cannot properly pay wage claims incurred by the company before the receivership.

4. The receiver of a brewing company had, prior to his appointment, been engaged in the wholesale liquor business and had handled a large part of the output of the brewing company. He had received a monthly salary of $600 from the brewing company in consideration of his having rejected an offer to sell out his wholesale liquor business and having continued to handle the output of the brewing company. After his appointment as receiver, he was authorized to carry on the business of the brewing company and continued the arrangement under which he received $600 per month. The brewing company was adjudged a bankrupt, and the receiver filed his account, wherein he claimed credit for $21,000 for payments on account of the monthly salary. The auditor, to whom the account was referred, allowed the receiver $15,000 as compensation for his services and surcharged him with the amount

of the monthly payments; with an item of $1,008 paid out of the funds of the company for a wholesale liquor license fee paid for carrying on the receiver's individual business and with an item of $109.33 for wages paid the receiver's brother for services rendered prior to the receivership. *Held*, the court properly dismissed exceptions to the auditor's report.

*Practice, Supreme Court—Appeals—Matters not referred to in statement of question involved.*

5. On appeal to the Supreme Court matters not referred to in the statement of the question involved are not before the court and will not be considered.

Argued April 21, 1915. Appeal, No. 177, Jan. T., 1915, by Stephen A. Pramuk, receiver of the Shamokin Brewing Company, from decree of C. P. Northumberland Co., Equity Docket, No. 315, in equity, in case of Francis Haile, v. The Shamokin Brewing Company. Before BROWN, C. J., ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Audit of the accounts of a receiver.

Exceptions to the report of J. A. Witmer, Esq., auditor. Before MOSER, J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. Stephen A. Pramuk, receiver of the Shamokin Brewing Company, appealed.

*Error assigned* was in dismissing the exceptions.

*John F. Whalen,* and *W. H. M. Oram* and *J. A. Welsh,* for appellants.

*C. R. Savidge,* with him *Edward Raker,* for appellees.

OPINION BY MR. JUSTICE FRAZER, May 26, 1915:

The Shamokin Brewing Company was incorporated in 1903 under the laws of Pennsylvania for the purpose of manufacturing and selling malt and brewed liquors and

carried on business in the Borough of Shamokin until April 5, 1909, at which time Stephen Pramuk, appellant, was appointed receiver for the company by the Court of Common Pleas of Northumberland County. The company had been losing money steadily all through its operations, and at the time of the appointment of the receiver its indebtedness was between $150,000 and $200,-000. Immediately upon appellant qualifying as receiver, the court upon his petition authorized him to carry on the business of the company, and for that purpose empowered him to borrow the sum of $25,000 to be used in replenishing stock and supplies, and renewing equipment, all of which appellant alleged was necessary to continue the business as a going concern.

Appellant filed his first account as receiver in 1910, and a second and final account on July 8, 1912. By permission of the court which appointed him, Pramuk continued to carry on the business until April 26, 1912, a period of thirty-five months, when the company was adjudged a bankrupt in the United States District Court and trustees appointed by that court.

During the time the Shamokin Brewing Company was engaged in business, appellant was also in the business of selling liquors, and was employed by the brewing company to handle its output on commission. He controlled the sale of liquors through leases and ownership of the properties to a large number of hotels in the surrounding country, his sales reaching four hundred barrels of beer monthly, upon which he received a commission of $1.50 a barrel. In the year of 1907, he was handling a large part of the product of the Shamokin Brewing Company in this manner. He also owned and conducted a wholesale liquor establishment in Shamokin Borough, which business he continued after his appointmen as receiver; his time being divided between his own business and the duties incident to the receivership.

Prior to appellant's appointment as receiver, an offer of $68,000 was made to him by another brewing company

for the purchase of the business which he controlled. This offer he communicated to the Shamokin Brewing Company, and in order to retain the business to itself that company agreed to pay appellant in lieu of commissions a monthly salary of $600.00. This arrangement remained in force until the time of the receivership. Following his appointment as receiver, appellant continued to pay to himself out of the funds of the company the monthly sum of $600.00 during the time he conducted the business as receiver—the sum thus paid amounting to $21,000. Appellant attempts to justify this action on the ground that it was to the interest of the company to receive the benefits of the business thus procured, and therefore continue the contract between the brewing company and himself.

Appellant, as receiver, paid out of the receivership funds the fee chargeable for his own wholesale liquor license and also took credit for a greater amount of salary than his contract called for, to the extent of $6,600. This latter item was entered by mistake; and, as to it, appellant seems to admit it to be a proper item of surcharge. Nor is the propriety of surcharging an item of $2,168.85, which had not been carried over from the prior account, questioned. The principal matters for determination raised by the assignments of error are: (1) The surcharge of $21,000 above referred to (2) the surcharge of the sum of $1,008, the amount paid for appellant's individual wholesale liquor license, (3) the right of appellant to pay a claim of $109.33 to his brother for wages due prior to appellant's appointment as receiver, and (4) the refusal of the auditor to allow other wage claimants to participate in the distribution of the funds in the receiver's hands for labor done within six months immediately preceding the appointment of the receiver.

The auditor found the property of the company was made valuable during the administration of the receiver by various additions and improvements, and by the increase of stock which he turned over to the trustees in

bankruptcy. It was also found the property of the corporation was in a better state of preservation and more valuable generally than at the beginning of the receivership, and that there were outstanding accounts due the receiver which were collected by the trustees in bankruptcy. A receiver is an officer of the court; and,. by accepting such appointment, he accepts the responsibilities of his office, which involves the exercise of his best business experience and influence for the benefit of the company in the same manner as if he were the sole owner of the business. For these services the law recognizes the justice of compensation measured by the circumstances of the case. Beyond such compensation, the receiver may not profit by his position to the detriment of the creditors or owners of the business. The very fact of his ability to control trade or his familiarity with the business might have been and probably was the inducement for appellant's appointment by the court as a person most likely to successfully wind up the affairs of the corporation, especially where, as here, the purpose was to keep it a going concern. If appellant could not afford to undertake the duties required by the appointment at the compensation usually allowed under such circumstances, the time to make this known was when the appointment was made by the court; not having done so and having accepted the appointment, his duty to the court required of him the excercise of his utmost ability and influence in closing the business, for which service he would be entitled to receive the compensation usually allowed receivers. In view of the fact, that his entire time was not employed in the performance of his receivership duties, the compensation of $15,000 allowed him by the auditor was both ample and reasonable under the circumstances, and the surcharge of the $21,000, which he paid to himself under his contract with the company at the time of his appointment as receiver, was entirely proper.

As to the item of $1,008.00, paid out of the funds of

the company for the wholesale liquor license fee for carrying on appellant's individual business, there can be no justification whatever for this payment. Whatever may be the custom in Northumberland County of brewers with respect to the payment of such fees to the persons or companies who handle their products, it is highly improper for an officer of the court to use trust funds for such purpose. Such practice may well be criticised as contrary to public policy as indicated in the Act of June 9, 1891, P. L. 257, Sec. 4, 2 Purd. 2335, which forbids the holder of a wholesale liquor license from being pecuniarily interested in the profits of the business at any other place in the county where liquors are sold or kept for sale. Without passing on this question, however, the payment by the receiver of his individual liquor license out of the receivership funds was highly improper, and the surcharge is sustained.

The surcharge of $109.33, for wages paid appellant's brother for services rendered prior to appellant's appointment as receiver and allowed by him, may be considered in connection with the other claims for wages presented to the auditor. The Act of May 12, 1891, P. L. 54, Sec. 1, 4 Purd. 5039, provides that money due for labor and services for an amount not in excess of $200.00, and for a period not exceeding six months "preceding the sale or transfer of the real or personal property" of any person or company "by execution or otherwise, on account of the death or insolvency of such employer or employers, shall be a lien upon said real or personal property......to the extent of the interest of such employer or employers in said property, and shall be preferred and first paid out of the proceeds of the sale of such real and personal property." This act by its terms creates a lien on the property for the benefit of wage claimants, and requires such claims to be first paid "out of the proceeds of the sale" of such property. There can, however, be no proceeds until a sale takes place: Wilkinson v. Patton, 162 Pa. 12; Mettfett v. Mohn, 171 Pa. 395.

Had the property been sold by the receiver appointed by the Court of Common Pleas, undoubtedly the wage claimants would have been entitled to preference upon distribution of the fund. The effect of the bankruptcy proceedings in the Federal court, however, was to suspend the State court proceedings, under which appellant was appointed receiver, and instead of a sale, the property was rightly transferred to the trustees in bankruptcy. No fund having been created by sale the wage claimants must, therefore, await a sale of the property and distribution of the fund realized in the Federal court.

In view of this conclusion, appellant was properly surcharged with the claim of his brother for wages. There appears no good reason why the services of a particular driver of a wagon was of such importance that the successful continuation of the business depended upon his retention in the employ of the receiver, as was argued by appellant's counsel.

Appellant also complains of the refusal to allow an item of $1,700.00, claimed to be due him on an open account and which the auditing judge disposed of on the ground that the claim was not presented before the auditor and not sustained by competent proof. Without passing on the correctness of this conclusion, it is sufficient to say that the matter is not in any way referred to in the statement of questions involved, and is, therefore, not properly before us.

The decree is affirmed at the cost of appellant.