Pearson Mfg. Co. *v.* Pittsburgh Steamboat Co.

Argued September 29, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Albert C. Hirsch,* with him *Ralph H. Demmler, J. Randall Thomas* and *Watson & Freeman,* for appellant.—All the creditors are entitled to participate in distribution of the fund arising from the insurance taken out after the receivership, in which the receiver was the only assured: Olyphant Lumber Co. v. Ins. Co., 4 Pa. Superior Ct. 100; Seitz v. Bollinger, 37 Pa. C. C. 260; Columbia Ins. Co. v. Lawrence, 10 Pet. 508; Wheeler v. Ins. Co., 101 U. S. 439; McLaughlin v. Bank, 22 Utah 473.

The receiver was under no duty to fulfill the covenant in the mortgage to insure for the benefit of the mort-

gagees: Brown v. Warner, 78 Tex. 543; Reber v. Wagon Works, 19 Pa. Dist. 806.

It was the duty of the receiver to insurance for the benefit of all the creditors: Duplex Printing Co. v. Publishing Co., 213 Pa. 207.

The mortgagees are estopped because they failed to pursue the remedies prescribed under the mortgage: Farmers Loan & Trust Co. v. Plate Glass Co., 186 U. S. 434; Bailey v. Mfg. Co., 238 Fed. 257; Greenfield's Est., 14 Pa. 489; Little v. Fearon, 252 Pa. 430.

*Gifford K. Wright,* with him *James K. Ruby* and *Alter, Wright & Barron,* for appellee.

OPINION BY MR. JUSTICE MAXEY, November 28, 1932:

The question before us is: What parties are entitled to insurance money paid to the receiver of an insolvent corporation for the fire loss of the corporation's principal asset, a certain excursion boat called "Greater Pittsburgh?" The respective claimants are the corporation's general creditors and the holders of a mortgage on the vessel.

Defendant company, incorporated in 1929, conducted a carrying trade on rivers in the vicinity of Pittsburgh. Its business was unprofitable. Within a year of incorporation it became heavily indebted to some of its officers and stockholders. To secure them the company, by vote of its stockholders, agreed to give a mortgage on its steamer, the "Greater Pittsburgh." This mortgage for $62,500 was duly executed on March 7, 1930, and the Allegheny Trust Company was made trustee. The steamboat company became hopelessly involved financially and on petition of a creditor, a receiver was appointed for the company on October 23, 1930. The mortgage on the vessel contained a clause whereby the company agreed to insure it for the security of the trustee, to an amount satisfactory to the latter. The trustee was also authorized to place the insurance at the com-

pany's expense if the company failed to do so. In November, 1930, certain insurance on the vessel expired, but the receiver had no funds for renewal. He so informed the officers of the company, some of the beneficiaries under the mortgage, telling them that, if they would order the insurance and "arrange it in any way they please," he, as receiver, would pay for it if and when he subsequently came into funds. The insurance was placed in the name of the receiver as such, premiums being paid by the Allegheny Trust Company, and receipts were issued to the defendant company. The total amount of the insurance was subsequently reduced to $50,000. There was no clause in the policies directing payment to the mortgagees. The vessel was destroyed by fire on November 11, 1931, and the underwriting companies paid the adjusted loss, amounting to $49,000, to H. M. Oliver, receiver. The assets remaining in the hands of the receiver to satisfy unsecured claims against the corporation are negligible. The appellant is one of the unsecured creditors and he contends that the insurance proceeds are distributable to all the general creditors ratably. The holders of the mortgage on the destroyed property contend that it goes to them.

It is claimed that since the insurance policies themselves and all the accompanying documents and instruments refer to the receiver alone as the insured and make no reference to the interest of the Allegheny Trust Company and the trust beneficiaries in the insured property, the trust company has no right to the proceeds. It is averred that this result must follow from general principles of insurance and receivership law, such as, that the insurance contract was between the insurance company and the receiver, not between the company and the trustee under the mortgage (Lumber Co. v. Ins. Co., 4 Pa. Superior Ct. 100) ; that the obligation to insure was upon the insolvent company, not its receiver, who represented its creditors, not the company itself (Duplex Printing Press Co. v. Clipper Pub. Co., 213 Pa. 207, 62

A. 841; Cushing v. Perot, 175 Pa. 66, 34 A. 447; Blum Bros. v. Girard Nat. Bank, 248 Pa. 148, 93 A. 940) ; and that since it was the receiver who took out the insurance, not the company, the mortgagee can show no equity to receive the proceeds (Wheeler v. Ins. Co., 101 U. S. 439; In re San Joaquin Valley Packing Co., 295 Fed. 311; Stearns v. Quincy Ins. Co., 124 Mass. 61). The answer to that argument is that the facts show that the receiver did not take out the insurance for his own benefit or for that of the parties he represented. On the contrary, the insurance was actually placed and paid for by the trust company for its own benefit as trustee for the mortgagees. Appellant argues that the insurance was taken solely in the receiver's name and not in that of the company or for the benefit of the mortgagees. This was probably an oversight on the part of the trust company, but it in no way prejudices the general creditors and they cannot support their claim on such a frail foundation in the face of the manifest equities of the situation.

If no receivership question were involved, and if the policies in question had been taken out by the Pittsburgh Steamboat Company itself, pursuant to its covenant in the mortgage, there can be no doubt that the mortgagees would be entitled to the proceeds on the theory of an equitable lien, even though, as here, the policies contained no mortgagee clause. Authorities are abundant on this proposition: Wheeler v. Ins. Co., 101 U. S. 439; Juneau County State Bank v. Steckling, 181, Wis. 430, 195 N. W. 396; Farmers' & Merchants' Nat. Bank v. Moore, 135 S. C. 391, 133 S. E. 913, 47 A. L. R. 1001; 14 Ruling Case Law 1367 ("Insurance," section 536) ; 26 Corpus Juris, page 442 ("Fire Insurance," section 590) ; 8 Couch, Cyclopedia of Insurance Law, section 1936c; see also Peoples Street Ry. Co. v. Spencer, 156 Pa. 85, 27 A. 113; Ins. Co. of Pa. v. Phœnix Ins. Co., 71 Pa. 31.

The point made by the appellant is that the company, the mortgagor, did not take out the policies, but that

they were placed in the name of the receiver, representing the body of general creditors, with nothing expressed as to the mortgagees' beneficial interest in the proceeds. The question is: Does this fact affect the legal rights of the mortgagees? We think not. It is an undisputed fact that the receiver did not himself actually place the insurance; the mortgagees placed it and paid for it. The former knew the insurance had been issued, but testified that he never had the policies in his possession until after the loss occurred. Then he collected the insurance money and deposited it in the trustee bank. Even if he had procured the insurance himself in his own name, payable to himself in his capacity as receiver, thus complying with the terms of his company's covenant in the mortgage, the claim of the general creditors would be a doubtful one. The legal status of a receiver, his authority and duty, is clear. He is "the officer, the executive hand, of a court of equity. His duty is to protect and preserve, for the benefit of the persons ultimately entitled to it, an estate over which the court has found it necessary to extend its care:" Schwartz v. Keystone Oil Co., 153 Pa. 283, 286, 25 A. 1018. He takes only the interest of the owner of the property subject to all valid liens and encumbrances against it: Phila. Trust Co. v. Northumberland County Traction Co., 258 Pa. 152, 172, 101 A. 970; see also Pramuk's App., 250 Pa. 45, 95 A. 326; McDougall v. Huntingdon & Br. T. R. & C. Co., 294 Pa. 108, 143 A. 574. Granting that the mere assignee of the mortgagor, who assumes nothing with respect to the mortgage contract, may take out insurance on his equity of redemption without subjecting the proceeds to an equitable lien for the mortgagee's benefit (see Farmers' Loan & Trust Co. v. Penn Plate Glass Co., 186 U. S. 434; annotations in 38 A. L. R. 1404, and 47 A. L. R. 1011), we think a receiver stands in a more responsible position. He collects and administers assets not in his own right, for his own benefit, but, by virtue of a court order, for the bene-

fit of all the creditors, secured or otherwise. It has been held that the assignee of the mortgagor, who assumes the mortgage containing a covenant to insure, does thereby subject the proceeds of his own policy to the mortgagee's claim. See Farmers' & Merchants' Nat. Bank v. Moore, supra; Johnson v. Northern Minn. Land & Invest. Co., 168 Iowa 340, 150 N. W. 596. The receiver's position here is strikingly analogous to the assignee for benefit of creditors in American Ice Co. v. Eastern Trust & Banking Co., 188 U. S. 626, where the facts were substantially similar to the present and the mortgagee was held entitled to proceeds of insurance taken out by the assignee. The ruling in Farmers' Loan & Trust Co. v. Penn Plate Glass Co., supra, was expressly distinguished as inapplicable. It may be noted that in McLaughlin v. Park City Bank, 22 Utah 473, 63 Pac. 589, 54 L. R. A. 343, relied on by appellant, the lien claimant was merely an attaching creditor whose interest neither the bank nor its receiver was under a duty to insure. On the other hand, in Smith & Furbush Mach. Co. v. Huycke, 72 Okla. 30, 177 Pac. 919, it was said that a receiver held his corporation's property by the same right and title as that of the corporation itself, "so that, when he insured the property in his own name as receiver, the insurance was effected for the benefit of the owner and creditors *according to their respective interests therein and liens thereto.*" Consequently where the receiver's company, the purchaser, had previously agreed to insure the goods for the protection of the conditional vendor, the latter's lien took precedence over the claims of general creditors, although admittedly the vendee's receiver had an insurable interest for their benefit. See also the decision in Cronenwett v. Boston & A. Transp. Co., 95 Fed. 52, where maritime lienors were held preferentially entitled. In the case at bar when it is considered that the receiver had no part in procuring the insurance and that the mortgagees, eager to safeguard their interest, took out the policies and paid for them, a thing which the in-

solvent corporation had covenanted to do for them and failed to do, no principle of law or equity requires that the mortgagees should now be deprived of the fruits of their own forethought and diligence.

Certain other propositions are pressed by appellant. It is said that the mortgagees are estopped because they negligently allowed the policies to be issued in the form in which they were, without a loss-payable clause for the benefit of the mortgagees. But there can be no question of estoppel, for, as we view the case, the mortgagees did enough to protect their interests, even though they might have done more. The fact that one of the policies contained a clause excepting property encumbered by a chattel mortgage shows no intent one way or the other as to whose interest was insured. The entire vessel was encumbered, and if this clause excepted the whole vessel as a risk, then nobody's interest was insured, mortgagees', receiver's, or creditors'. This was a matter to be settled between insurer and insured, as the opinion of the lower court in banc points out, and was not open to question by appellant. See Wheeler v. Ins. Co., 101 U. S. at page 441. As soon as the proceeds of the policies were paid to the receiver, the lien of the mortgagees attached, without regard to any intent on the part of the insurance company to insure a particular interest. It is manifest that the whole purpose of the mortgagees in placing the insurance was to protect their own interest. This they did effectually.

The decree of the lower court is affirmed at appellant's cost.