## United Security Trust Company Case.

Argued January 6, 1936. Before KEPHART, C. J., SCHAFFER, DREW and LINN, JJ.

*Frederick H. Spotts,* of *Pepper, Bodine, Stokes & Schoch,* with him *James A. Montgomery, Jr.,* for appellants.

*Gerald F. Flood,* Special Deputy Attorney General, with him *Robert L. Myers, Jr.,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellee.

*Morton Meyers,* of *Graham, Yost & Meyers,* with him *Fox, Rothschild, O'Brien & Frankel,* filed a brief under Rule 61 on behalf of interested parties.

OPINION BY MR. JUSTICE LINN, March 23, 1936:

Creditors complain of the dismissal of their exceptions to the account of the Secretary of Banking. On October 5, 1931, the Secretary took possession of the United Security Trust Company pursuant to the Act of June 15, 1923, P. L. 809, as amended (7 PS section 1 et seq.).[1] There was then on deposit the sum of $51,720.45 to the credit of trustees, and of receivers, of certain bankrupt estates. At that time, too, the clerk of the District Court of the United States for the Eastern District of Pennsylvania held $20,000 United States Treasury bonds, delivered to him by the trust company, as security for the repayment of the deposits. He sold the bonds for $18,-892.48 and distributed the proceeds pro rata to the es-

---

[1] Superseded by Act of May 15, 1933, P. L. 565.

tates, leaving to their credit on the books of the trust company $32,827.97. Two dividends, one of 10% and one of 15% were declared in 1932. In his account the Secretary of Banking allowed dividends only on the amount of the deposits remaining unpaid after crediting them with the proceeds realized by the sale of the collateral, that is, he allowed dividends on $32,827.97, as the balance due, instead of on $51,720.45, the original debt. The common pleas dismissed the exceptions,[2] the Superior Court affirmed and an appeal to this court was allowed.

Appellants state their contention as follows: "A creditor of an insolvent estate is entitled to dividends on the full amount of his debt, notwithstanding he has collateral security on which he has or may thereafter receive a partial payment of his debt."

Appellee contends that if a secured creditor elects to prove a claim, he may do so only for the balance due him, i. e., the original amount, less the value of the collateral or what he has realized on it.

Both contentions have been the subject of much familiar discussion. The rule for which appellants contend is known as the Equity or Chancery Rule; that for which the appellee contends, the Bankruptcy Rule. The Bankruptcy Rule originated in bankruptcy statutes; the Equity Rule developed in chancery, though not universally applied even there. The Bankruptcy Rule subsequently found enactment in state insolvency legislation providing for distribution of insolvent estates. Under this rule, the sum realized on the collateral, or its value if unconverted, is treated as payment on account; the balance due is the provable claim. In the three opinions filed in *Merrill v. Nat. Bank of Jacksonville*, 173 U. S. 131, dealing with the national banking law, will be found an elaborate discussion of the merits of the rules;

---

[2] They were filed by two surety companies to which the accounts were assigned.

also see *Glenn on Liquidation* (1935), Chapter 36, page 749; *Clark, Proof of Secured Creditors,* 15 Ill. L. Rev. 171; *Annotation:* 94 A. L. R. 468; L. R. A. [1918B] 1024. The Bankruptcy Rule is applied in *First Amer. Bank & T. Co. v. Palm Beach,* 96 Fla. 247, 117 So. 900; *Union Trust Co. v. Fletcher Sav. & T. Co.,* 194 Ind. 314, 142 N. E. 711; *Re Commissioner of Banks,* 241 Mass. 346, 136 N. E. 269; *First Nat. Bank v. Mansfield State Bank,* 127 Wash. 475, 221 P. 595; *Butler v. Commonwealth Tobacco Co.,* 74 N. J. Eq. 423, 70 A. 319; *Creecy v. Pierce,* 69 N. C. 67; *Withernsea Brick Works,* 16 Ch. D. 337 (1880), while the Equity Rule is applied in *In re Bank of Dakley,* 131 Cal. App. 203, 21 P. (2d) 164; *Mc-Grath v. Carnegie Trust Co.,* 221 N. Y. 92, 116 N. E. 787; *First Wisconsin Nat. Bank v. Kingston,* 213 Wis. 681, 252 N. W. 153; *In re E. Bement's Sons,* 150 Mich. 536, 114 N. W. 329; *Merrill v. Nat. Bank of Jacksonville,* 173 U. S. 131; *Goodman Mfg. Co. v. Pitts-Buffalo Co.,* 265 Fed. 561; *American Surety Co. v. DeCarle,* 25 F. (2d) 18. It is unnecessary to consider variations of these general rules applied in some states, e. g., *First Nat. Bank v. Green,* 221 Ala. 201, 128 So. 394; *Merchants' Nat. Bank v. Taylor,* 181 Ark. 356, 25 S. W. (2d) 1048; *Third Nat. Bank v. Lanahan,* 66 Md. 461, 7 A. 615; *Furness v. Union Nat. Bank,* 147 Ill. 570, 35 N. E. 624; *Rankin v. Yellowstone Bank and Trust Co.,* 75 Mont. 43, 243 P. 813.

Section 29 of the Act of June 15, 1923, P. L. 809 (under which the appellee is in charge of the insolvent bank), as amended May 5, 1927, P. L. 762, 767, 7 PS, section 29, provides: "Status of Secretary as Receiver. —Except as herein otherwise provided, the secretary shall, when he has taken possession of the business and property of a corporation or person, have all the rights, powers, and duties of a receiver appointed by any court of equity in this Commonwealth; and he shall be vested, in his official capacity, with all the rights, powers, and duties of such corporation or person and with all the

property of such corporation or person, including debts due, liens, or securities therefor, and rights of action or redemption, whether or not the property of such corporation or person, including debts due, liens, or security therefor, and rights of action or redemption, are held in the name of such corporation or person, or in the name of some other corporation or person, but actually the property of the corporation or person of which, or of whom, the secretary has possession.

"He shall be the representative of the creditors of the corporation or person, and entitled, as such, to have vacated and set aside, for the benefit of the creditors, any judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or encumbrance, which could have been avoided by the creditors or any of them, or by which it is attempted to give any creditor unlawful preference over another."

Proof of claims is dealt with in section 42 as amended in 1927, P. L. 770, 7 PS, section 42, which provides in part: "No claim other than the claim of a depositor shall be allowed unless the claimant, or some one for him if he cannot do so, shall, within four months from the date of such notice, furnish to the secretary a statement of his claim, together with a copy of any book entries pertaining thereto, or any note or other writing evidencing the same, verified by an affidavit in substantially the following form: 'I, (name of claimant) do solemnly swear (or affirm) that the above is a true statement of my claim against (name of corporation or person); that there are no credits or allowances against the same except as therein set forth; that I have not directly or indirectly made or entered into any bargain, arrangement, or agreement, express or implied, to take or receive, directly or indirectly, any money, property, or consideration whatever, to or for myself, or to or for any other person, firm, or corporation whatever, other than my dividend as a creditor; and that there is no collateral security for said indebtedness, or any part there-

of, held by me or anyone else other than as above set forth.' "

Allowance of claim and distribution are dealt with in sections 44 and 46 as amended (7 PS, sections 44 and 46). The Act of May 23, 1913, P. L. 354, 7 PS, section 689, provided the order of distribution and gave depositors a preference over "remaining liabilities." See *Metropolitan Life Ins. Co. App.*, 310 Pa. 17, 164 A. 715.

The obvious purpose was to treat alike all creditors of a given class to provide for equality of distribution and we all agree that equality of distribution among creditors can only be attained by the application of the Bankruptcy Rule.[3]

---

[3] The inequality resulting from the rejection of that rule and the adoption of the Equity Rule appears in the illustration given by WHITE, J., in his dissenting opinion in *Merrill v. Nat. Bank of Jacksonville,* supra, at page 148. "Is it not evident that if one creditor is allowed to reap the whole benefit of his security, and at the same time take from the general assets a dividend, on his whole claim, as if he had no security, he thereby obtains an advantage over the other general creditors, and that he gets more than his ratable share of the general assets? Let me illustrate the unavoidable consequence of the doctrine now recognized [by the majority opinion applying the Equity Rule]. A loans a national bank $5,000, and takes as the evidence of such loan a note of the bank for the sum named, without security. The lender is thus a general or unsecured creditor for the sum of $5,000. B loans to the same bank $5,000, without security. He is applied to for a further loan, and agrees to loan another $5,000 on receiving collateral worth $5,000, and requires that a new note be executed for the amount of both loans, which recites that it is secured by the collateral in question. While theoretically, therefore, B is a secured creditor for $10,000, he practically has no security for $5,000 thereof. Insolvency supervenes. The general assets received by the comptroller equal only fifty per cent of the claims. Now, under the rule which the court establishes, A on his unsecured claim of $5,000 collects a dividend of but $2,500, thereby losing $2,500; B, on the other hand, who proves $10,000, taking no account whatever of his collateral, realizes by way of dividends $5,000, and by collections on collaterals a similar amount, with the result that though as to $5,000 he was, in effect, an unsecured creditor, he loses nothing. B is thus in precisely as good a situation as though he had originally demanded

We come, then, to appellants' contention that the Equity Rule and not the Bankruptcy Rule has been heretofore applied in this Commonwealth. It is true that the Equity Rule was applied in decisions (cited by appellant) beginning with *Morris v. Olwine*, 22 Pa. 441, and ending with *Jamison's Est.*, 163 Pa. 143, 29 A. 1001, (1894) dealing with assignments for the benefit of creditors. But for that rule, the Bankruptcy Rule was substituted by section 28 of the Insolvency Act of June 4, 1901, P. L. 404, 39 PS, section 90.[4]

While that act is superseded in its bankruptcy features by the Bankruptcy Act, its severable insolvency provisions are not rendered inoperative by the federal statute; they are in force: *Fidelity Trust Co. v. Union Nat. Bank*, 313 Pa. 467, 486, 169 A. 209; *Pobreslo v.*

---

and received from the borrowing bank collateral securities equal in value to the full amount loaned. It is thus apparent that the application of the rule would operate to enable B—who, I repeat, virtually held no collateral security for $5,000 of the sums loaned—to be paid his entire debt, though the assets of the insolvent estate of the borrower paid but fifty cents on the dollar, while another creditor holding an unsecured claim for $5,000 fails to realize thereon more than $2,500."

[4] Section 28 provides—"All claims shall be made as of the date of the distribution of the fund, interest being allowed or discount being made to that time. A creditor having a claim for which the insolvent is primarily liable, and others secondarily, may prove for his whole claim; but, if the insolvent is only secondarily liable, the value of the liability of the primary debtor shall be adjusted between the creditor and the assignee; or, if the valuation cannot be agreed on, the same shall be submitted to the appropriate tribunal, and a dividend shall only be awarded to the creditor on the difference between such value, so determined, and the amount of his claim. In like manner, any collateral security held by any creditor for his debt shall be valued by said tribunal, and if the security be retained by the creditor his dividend shall be on the difference between his claim and the value of his security, so ascertained: Provided, That the creditor shall have the right to surrender his security, and take a dividend on his whole debt. If such creditor refuses to have his security valued or surrender the same, he shall be excluded from participation in the fund."

*Boyd Co.*, 287 U. S. 518, 525; *Johnson v. Star*, 287 U. S. 527. Appellants' contention therefore finds no support in this class of cases.

In addition to the cases growing out of assignments for creditors, appellants refer to a decision of the Superior Court, *Fulton's Est.*, 65 Pa. Superior Ct. 437 (1917), involving a claim for interest presented in the orphans' court by a secured creditor against the estate of an insolvent decedent. No question was made as to which of these rules was applicable. The court applied the Equity Rule, but, we think, erroneously; we now disapprove that decision as contrary to the policy of the law declared in the Act of 1901, supra. In *Fulton's Est.*, HEAD, J., at page 441, said: "The estate of the decedent was insolvent. His death, under such circumstances, practically effected an assignment of all of his property to his creditors and thereafter it belonged to them in proportion to the amount of the debt due to each." In support of their contention, the learned counsel for appellants in the present case quote from the opinion of HEAD, J., (page 442) as follows: "The fact that he [the creditor] thus had recourse to two funds in no way impaired his right to proceed against either or both so long as he did not claim or secure more than was justly due." If this statement be unobjectionable in the case of a solvent debtor, it is not accurate in its implications when applied to an insolvent's estate. The creditor can of course still go against his collateral, but the finding of insolvency has produced a change in the status of the claims upon, and the custody of, the insolvent's assets; and the duty of the court to decree equality of distribution to those entitled by the application of equitable principles has also intervened. Though the creditor retains the right to deal with the collateral, the necessity for equality of distribution enables the court to put him on terms in asserting his right to recourse to the general assets; in effect, the distributing court says to him, "You do not have two independent sources of payment;

you have, in the collateral, an asset of the insolvent with which your contract enables you to deal, but it will be inequitable to permit you to claim on the fund (the remaining assets of the insolvent) available for distribution among creditors pro rata, unless you do equity by surrendering to that fund (or by accounting for its value) the insolvent's property held as collateral; you cannot enforce or retain the collateral and also prove for the whole claim as an unsecured creditor; you may prove only for the balance due for that is all you could have done if insolvency had not intervened."[5]

We need say nothing concerning *Chambersburg Trust Co. v. Alexander*, 102 Pa. Superior Ct. 158, also cited by appellants, except to note that the fund distributed was that of a solvent person.

Laying aside, then, the cases dealing with assignments for the benefit of creditors, for which the rule is supplied by the Act of 1901, and also *Fulton's Est.*, supra, dealing with an insolvent decedent's property, administered in the orphans' court, a court of equity, we come to a possible third class in which the question may arise: receiverships in equity. No case of this class is cited (and we have found none) in which the question was considered by either of our appellate courts. Rights of creditors are fixed as of the date of the appointment of receivers as creditors' rights are fixed as of the date of the assignment for their benefit: *Dean & Sons' App.*, 98 Pa. 101, 104. While the assignment cases held that creditors' "rights are those of an owner by virtue of the deed of assignment" (*Miller's App.*, 35 Pa. 481) equity, in re-

---

[5] In dealing with a claim against an insolvent decedent's estate, JESSEL, M. R., in *Williams v. Hopkins*, 18 Ch. Div. 370, 377 (1881) said: "The Legislature considered it to be absurd that if a trader died the day after being adjudicated a bankrupt his assets should be administered in one way, and if he died the day before the day on which, if he had lived, he would have been adjudicated bankrupt, they should be administered in another way. They had then to consider whether the rule in Chancery or the rule in bankruptcy ought to prevail, and decided in favour of the latter."

ceivership proceedings has seized the assets for distribution; they are in the custody of the law and will be distributed according to equitable principles *(Blum Bros. v. Girard Nat. Bank,* 248 Pa. 148, 155, 93 A. 940; *Pearson Mfg. Co. v. Pittsburgh Steamboat Co.,* 309 Pa. 340, 345, 163 A. 680), unless some statute provides otherwise. Generally, equality is equity. In such cases, therefore, we think the Bankruptcy Rule should be applied. The equitable doctrine of marshalling also furnishes a persuasive analogy: ". . . equity may require the creditor with two funds to resort first to that which the other creditors cannot reach . . .": *Graff & Co.'s Est.,* 139 Pa. 69, 74, 21 A. 233.

While the Insolvency Act of 1901 dealt with assignments for the benefit of creditors, the legislature, in substituting the Bankruptcy Rule for the Equity Rule theretofore applied, made a radical change in the policy of the law. The court may declare the scope of the change affected by the statute. "For although courts sometimes have been slow to extend the effect of statutes modifying the common law beyond the direct operation of the words, it is obvious that a statute may indicate a change in the policy of the law, although it expresses that change only in the specific cases most likely to occur to the mind": *Gooch v. Oregon Short Line R. R. Co.,* 258 U. S. 22, 24. We think, therefore, that desirable uniformity of administration will be attained by applying the Bankruptcy Rule in all cases of the distribution of the assets of insolvents whether living or dead, individual or corporate, and that as this court, since the Act of 1901, is not committed to the application of any other rule, the Bankruptcy Rule should hereafter be considered of general application.

The order appealed from is affirmed at appellants' costs.