## In re Elevated and Subway Building & Loan Association

*Herbert P. Sundheim,* Special Deputy Attorney General, for Secretary of Banking.

*Murdoch, Paxson, Kalish & Green,* for exceptant.

*Stanley Jakubowski,* contra.

LEWIS, J., December 17, 1937.—The Fidelity-Philadelphia Trust Company and Helene Levi, trustees under the will of I. Valentine Levi, presented a claim in the amount of $11,663.62. The accountant disallowed the entire claim with the exception of 1929 taxes, which he allowed in the sum of $368.01. At the audit counsel for the receiver stated that the claim was admitted with the exception of the attorney's commission of $450, and that the receiver was entitled to set off against the claim the fair value of the property, which is admitted to be $6,500, and rentals received by the mortgagees amounting to $166.05. The claim as it now stands amounts to $11,049.56, consisting of the principal sums of the three mortgages as reduced, an attorney's commission, interest on the debt, and taxes, from which have been deducted the $50 paid by claimants at sheriff's sale, rentals, and the 1929 taxes approved by the receiver in the account. Of the remainder the receiver admits $4,149.56.

Counsel for the claimants and for the receiver filed a stipulation of the facts giving rise to the claim, and the former offered in evidence exhibits A, B, C, D, and E of the account for the purpose of showing the solvency of the association with respect to creditors.

For the sake of brevity the stipulated facts may be summarized as follows: Claimants are the holders of three mortgages of $3,000 each upon premises 1520, 1522, and 1534 South Thirty-first Street in Philadelphia. The mortgages were executed by Anna Feldstein in 1925. The association acquired title to the mortgaged premises on December 4, 1928, and on January 30, 1929, entered into three extension of mortgage agreements with claimants, whereby the association guaranteed payment of principal, interest, and taxes in accordance with the terms of the mortgages. In March 1929 the association conveyed the premises to third persons. In February 1931 the mortgages were defaulted, and claimants instituted foreclosure proceedings, culminating in sheriff's sale in May 1932, at which time the exceptants bid in the properties for $50. On November 9, 1933, the Secretary of Banking took possession of the assets of the association.

The issue thus raised may be stated as follows: Is a mortgagee, which upon foreclosure has purchased the mortgaged premises for a nominal bid prior to the insolvency of a building and loan association that is liable to it under an extension of mortgage agreement, entitled to prove its claim against that association to the full extent of the deficiency, or only in the sum by which the association's obligation exceeds the fair or market value of the mortgaged premises?

The position taken by the receiver is that the association is insolvent within the meaning of section 41 of the Act of June 4, 1901, P. L. 404, 39 PS §32; that claimant is a secured creditor within the meaning of section 28 of the act, 39 PS §90; and that claimant, therefore, is entitled to prove its claim only to the extent by which the face amount thereof exceeds the value of the property

which it purchased at sheriff's sale. Counsel for the claimants controvert each of these propositions.

While we concur in the correctness of the ultimate result reached by the receiver, we do not consider the reasons advanced therefor express the true basis upon which that result must be founded.

In Stone v. Schiller B. & L. Assn. et al., 302 Pa. 544, 552, the Supreme Court said: "An insolvent association is one that, after paying its general creditors, cannot pay back to its shareholders, dollar for dollar, the amount of contributions". In spite of this application of the term "insolvent" to the estate of a building and loan association in the possession of the Banking Department that is sufficiently large to pay in full the claims of creditors, but not claims arising from the ownership of shares in the association, we hesitate to declare that such association is "insolvent" within the meaning of section 41 of the Act of June 4, 1901, 39 PS §32. Nevertheless, we have concluded that the declaration of the policy of the law made in the United Security Trust Company Case, 321 Pa. 276, comprehends the particular type of "insolvency" here involved.

Mr. Justice Linn at page 284 observed that the question of which rule should be applied arose in three classes of cases, viz., assignments for the benefit of creditors, estates of insolvent decedents, and "receiverships in equity." It was also remarked that "No case of this class [i. e., receiverships in equity] is cited (and we have found none) in which the question was considered by either of our appellate courts. . . . While the assignment cases held that creditors' 'rights are those of an owner by virtue of the deed of assignment' (*Miller's App.*, 35 Pa. 481), equity, in receivership proceedings has seized the assets for distribution; they are in the custody of the law and will be distributed according to equitable principles (*Blum Bros.* v. *Girard Nat. Bank*, 248 Pa. 148, 155, 93 A. 940; *Pearson Mfg. Co.* v. *Pittsburgh Steamboat Co.*, 309 Pa. 340, 345, 163 A. 680), unless some statute provides otherwise. Generally, equality is equity. In such

cases, therefore, we think the Bankruptcy Rule should be applied. . . .

"While the Insolvency Act of 1901 dealt with assignments for the benefit of creditors, the legislature, in substituting the Bankruptcy Rule for the Equity Rule theretofore applied, made a radical change in the policy of the law. The court may declare the scope of the change affected by the statute. 'For although courts sometimes have been slow to extend the effect of statutes modifying the common law beyond the direct operation of the words, it is obvious that a statute may indicate a change in the policy of the law, although it expresses that change only in the specific cases most likely to occur to the mind': *Gooch* v. *Oregon Short Line R. R. Co.*, 258 U. S. 22, 24. We think, therefore, that desirable uniformity of administration will be attained by applying the Bankruptcy Rule in all cases of the distribution of the assets of insolvents whether living or dead, individual or corporate, and that as this court, since the Act of 1901, is not committed to the application of any other rule, the Bankruptcy Rule should hereafter be considered of general application": United Security Trust Company Case, pp. 284-285.

We conclude that, under the decisions of the Pennsylvania Supreme Court, we must apply the bankruptcy rule in proceedings before us.

The next issue is to determine the consequences of the application of the bankruptcy rule to the facts of this case. Our decision in this regard is that a mortgagee who has foreclosed upon the mortgaged premises, prior to the time at which the association was taken into possession by the Department of Banking, and has purchased the premises himself at a nominal price because of depressed real estate values and lack of competitive bidding, is entitled to prove his claim to the extent only by which the face amount thereof exceeds the admitted market value of the mortgaged property at the time of sheriff's sale.

We are aware this is contrary to the rule applied under the Federal Bankruptcy Act: Ivanhoe B. & L. Assn. v. Orr, Trustee, 295 U. S. 243*; to the rule applied in an identical situation by Courts of Common Pleas Nos. 3 and 5 of this county: In the matter of, etc., Mortgage B. & L. Assn., in C. P. No. 5, no. 12603 of December term, 1932; In the matter of, etc., Providence B. & L. Assn., in C. P. 5 of this county: In the matter of, etc., Mortgage B. & L. Assn., in C. P. No. 5, no. 12603 of December term, 1932; In the matter of, etc., Providence B. & L. Assn., in C. P. No. 3, no. 3158 of June term, 1935; and ostensibly to the "fifty-dollar rule" established by a long line of Pennsylvania cases, of which the latest is White's Estate, 322 Pa. 85. Our conclusion, however, is in accord with that reached by the orphans' court of this county in Alexander's Estate, 31 D. & C. 17.

The most recent review of the law in Pennsylvania relating to bonds and mortgages is contained in the opinion of Mr. Justice Stern in Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483. It is there stated:

"As between the parties themselves, however hard the consequences might sometimes be, the amount realized at the sale was conclusive as to the value of the property" (p. 490).

Mr. Justice Stern points out, however, that this rule, the so-called "fifty-dollar rule", is limited in its application to proceedings between the mortgagor and mortgagee, and that

"The rule is not necessarily applicable as between the mortgagee and other creditors of the mortgagor, or as between the mortgagee and third persons generally. See *Bugh's Estate*, 95 Pa. Superior Ct. 29, 34; *Weightman* v. *Union Trust Co.*, 208 Pa. 449. . . . It is to be noted, however, that in bankruptcy, and in insolvency proceedings generally, the problem is not one between debtor and creditor, but among creditors inter se."

---

* The rule there stated depends upon the express language of the Federal Bankruptcy Act.

In Strauss v. W. H. Strauss & Co., Inc., 328 Pa. 72, (opinion by Mr. Justice Stern), the limitation of the "fifty-dollar rule" is again expressed and approved.

Hence, we think, in the instant proceeding the "fifty-dollar rule" is not conclusive as to the value of the security converted by the mortgagee. Evidence, here supplied by stipulation of the parties, is properly admissible to show the true value of the collateral.

The principle of distribution of an estate which is being liquidated under the supervision of a court sitting in equity, to which our courts are now committed, may be stated simply as follows: A claim against such an estate may be proved to the extent only that the claimant has not been made whole for the full amount of his debt. Since the "fifty-dollar rule" does not establish value conclusively as between the mortgagee and other creditors or third persons generally, we are not bound by it in determining to what extent this claimant has not been "made whole for the full amount of his debt". It is immaterial that the foreclosure was consummated prior to the time when the association was taken into possession by the Banking Department. The claim is for a deficiency. What that deficiency is must be determined, and such determination is to be made in accordance with equitable principles.

The inequity of permitting this claimant to prove its claim to its full face value, deducting only the nominal sum bid at sheriff's sale, is manifest. In approximate figures claimant would recover (a) property admitted to be worth $6,500; and (b) $10,500 in cash, a total of $17,000, in satisfaction of a claim of $11,000. Such a result would be shocking to the conscience of the chancellor.

For a more extended discussion of the principles which have led us to this conclusion see the opinion of the auditing judge and of the court in banc in Alexander's Estate, supra.