## Anhorn Estate

*Monroe H. Anders*, for accountants.

*Harry F. Hauser, Leon H. Fox* and *Wisler, Pearlstine, Talone & Gerber*, for claimants.

TAXIS, P. J., November 25, 1955.—Decedent died on September 15, 1954, and letters were granted on September 23, 1954, to Ethel V. Dixon and Marie F. Anhorn. The inheritance tax has not been paid. The Commonwealth entered an appearance claiming such transfer inheritance tax as may be due and assessed, but, as the estate is insolvent, no award of tax can be made. The estate is hopelessly insolvent. The balance for distribution after the payment of administration expenses and the family exemption is $13,393 in cash, and $135 in office equipment.

The United States Government has presented a claim in the amount of $4,652.55 representing outstanding liabilities of decedent in regard to income tax, $710.31 represents penalties and interest on these taxes. The question is raised whether or not the United States Government should be permitted to collect penalties and interest in an insolvent estate. The answer: Yes. In Maier Estate, 79 D. & C. 351, Philadelphia, 1952, it was stated: "Although section 622 of the Fiduciaries Act of April 18, 1949 . . . modifies to some extent the provisions of Section 13 of the Act of 1917, it is in effect substantially a reenactment of that section. Moreover, it specifically provides that payments in insolvent estates shall be made 'subject to any preference given by law to claims due the United States'. Since the federal statute giving priority to claims of the United States is still in effect, it seems clear that the right to priority to which the United States Government was heretofore entitled has in no way been changed or modified by the new statute": Cf. Hunter Pa. Orphans' Court Commonplace Book, p. 308, Supp. p. 102.

Another question is raised concerning the funeral bill. McConaghy Funeral Service, Ardmore, submitted a bill in the amount of $778.70. Although this court has long taken the view, since 1930 at least, that

in an insolvent estate $300 is the maximum which will be allowed, Cf. Wienandt Estate, 2 Fiduc. Rep. 441, Montg. (1952), and Rushczak Estate, 2 Fiduc. Rep. 440, Luz. (1952), the time has come when that amount should be reëxamined and reviewed in the light of present day values. The court can and does take notice that values and prices have greatly increased since the $300 maximum was initiated. I am of the opinion that $300 is, under present-day conditions, too meager an amount, that a $400 maximum is more realistic and more consonant with present-day charges, $400, therefore, is allowed on account of the McConaghy funeral service bill.

There were also submitted bills by Dr. Fred Robbins, Dr. Joseph A. Wagner, Dr. William T. Chain, by the Bryn Mawr Hospital, and Arthur L. Jacobs, druggist, claims totaling $1,431.96. They are allowed pursuant to section 622(3) of the Fiduciaries Act of April 18, 1949, P. L. 512.

The petition for adjudication raises a final question of whether the Wayne Federal Building and Loan Association should recover a dividend on its bond executed by decedent and his wife as tenants by the entireties or should it first have recourse to the real estate now in the name of the wife by reason of tenancy by the entireties. The mortgage given by decedent and his wife was in the amount of $9,000 and, by payments on account of principal, has been reduced to the present balance due of $7,394.70. In an insolvent estate, as here, should a creditor secured by a mortgage be first required to proceed against the collateral which he holds? Since the United Security Trust Company Case, 321 Pa. 276 (1936), the bankruptcy rule in an insolvent estate is applicable in the orphans' court, so that the usual rule of distribution must prevail, namely, that a secured creditor may participate in the general distribution only to the

extent that his debt exceeds the value of the collateral which is owed: Johnson's Estate, 55 Montg. 314 (1939); Dench's Estate, 15 Erie 313 (1933); Cf. Mayer Estate, 81 D. & C. 273 (1952). Distribution, therefore, is then made to the remaining creditors on a pro rata basis.

The balance for distribution is awarded as suggested under the last paragraph of the petition for adjudication. Counsel for accountants shall file a schedule of distribution in duplicate.

And now, November 25, 1955, this adjudication is confirmed nisi.