No. 34,767

Doris Robinson et al., *Appellees,* v. Maggie Breuninger, The North River Insurance Company et al., *Appellants.*

(107 P. 2d 688)

Opinion filed December 7, 1940.

*A. D. Weiskirch, Jr., Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the appellants.

*J. E. Addington* and *Howard A. Jones,* both of Topeka, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This was a suit in equity to subject the proceeds of a certain fire insurance policy to the payment of a mortgage debt on the property. A trial by the court resulted in judgment for plaintiffs against the mortgagor and the insurer. They have filed separate appeals.

The general facts may be stated as follows: M. E. McFadden owned a tract of about five and one-half acres near the Wakarusa

river, about ten miles from Topeka, which was improved as a cabin camp. There were nine cabins and a residence on the property. In May, 1927, he sold the property to the defendant, Maggie Breuninger. In part payment of the property she and her husband executed to McFadden their note, due in five years, for $3,700, with interest at six percent per annum, and secured the same by a mortgage upon the property purchased. This mortgage was duly recorded in the office of the register of deeds, May 17, 1927. It contained the following clause pertaining to insurance:

"Said parties of the first part [the mortgagors] hereby agree to procure and maintain policies of insurance on the buildings erected and to be erected upon the above-described premises, in some responsible insurance company, to the satisfaction of the legal holder or holders of this mortgage, to the amount of four thousand and no/100 dollars; loss, if any, payable to the mortgagee or his assigns. And it is further agreed, that every such policy of insurance shall be held by the party of the second part, or the legal holder or holders of said note, as collateral or additional security for the payment of the same, and the person or persons so holding any such policy of insurance shall have the right to collect and receive any and all moneys which may at any time become payable and receivable thereon, and apply the same, when received, to the payment of said note, together with the costs and expenses incurred in collecting said insurance; or may elect to have buildings repaired, or new buildings erected on the aforesaid mortgaged premises. Said party of the second part, or the legal holder or holders of said note, may deliver said policy to said parties of the first part, and require the collection of the same, and payment made of the proceeds as last above mentioned."

Soon after the sale M. E. McFadden moved to Pomona, in Franklin county, where his son, Henry McFadden, lives. Upon his death in 1930 his estate was administered in Franklin county. In making distribution of his estate this mortgage was assigned by the administrator to his children, Doris Robinson and Henry McFadden, the plaintiffs herein. The note was payable at the Wakarusa State Bank and it and the mortgage were left there. Later the assets of that bank were taken over by the Guaranty State Bank of Topeka and the note and mortgage were kept at that bank. In August, 1928, the mortgagors paid $500 on the principal, and in January, 1931, they paid an additional $400. They also paid the interest as it became due up to and including the payment in May, 1938. The buildings on the property were insured at the time Mrs. Breuninger bought it in 1927, and the insurance has been carried on the property since. The evidence indicates, although not very clearly, that up until 1934 the insurance policies carried mortgage clauses with loss payable to the mortgagee. In 1934 two insurance policies were

taken out by Mrs. Breuninger not far from the same time. Perhaps there had been two insurance policies prior to that time, but that is not clear from the record. One of these was in the principal sum of $1,500 and covered the cabins on the premises, and this had a mortgage clause attached. The other was on the residence property for $3,000. This did not have a mortgage clause attached. These policies were renewed in 1937. Mrs. Breuninger paid the premium on each of these policies. The policies of 1934 and 1937 were issued by the defendant, The North River Insurance Company, by its agent, F. M. Woodford, of Topeka. It is not clear from the record before us what insurer issued the policies prior to 1934. It appears these insurance policies insured against loss by fire, windstorm, tornado or hail. On two occasions, in September, 1936, and in August, 1937, there were losses covered by the policy on the cabins. In each case Mrs. Breuninger made the proof of loss which, among other things, showed a mortgage to the McFadden estate. Woodford, acting for the insurer, handled the settlement of these losses; the checks were made payable to Maggie Breuninger and the plaintiffs in this action, were endorsed by each of them, and were paid. In August, 1937, there was a small hail loss to the residence property and the check for that was issued to Maggie Breuninger. Plaintiffs testified they knew nothing about that loss or its payment.

On July 13, 1938, the dwelling house on the premises was destroyed by fire. An adjuster for the insurance company examined the premises the next day, found there was a total loss, and Mrs. Breuninger executed a proof of loss. Among other things this included the statement, "Mortgage to . . . The Estate of M. E. McFadden." The mortgagees learned of the fire and went to see Mrs. Breuninger the next day. She told them the loss had been adjusted for the full amount of the policy and that it would be about three weeks before the check would be received. They testified in substance that she further told them that the check would be made payable to both of them, just as the other checks had been which they had endorsed, and that it would be paid on the mortgage. On that point her testimony was that she told them that she would settle with them for the mortgage when the check came. They went to see her again in about three weeks and she told them there had been some delay about getting the check because of the mortgage clause, but that it would be received in about two weeks. When the proof of loss was sent in to the home office of the insurer,

Freeport, Ill., its manager wrote its agent, F. M. Woodford, of Topeka, who had written the policies and sent in the proof, under date of August 8, as follows:

"We recently received proof of loss claiming total loss under the above-captioned policy. According to the proof, there is a mortgage in favor of the estate of M. E. McFadden. Will you please advise us whether or not the mortgagee requested insurance protection under the above policy and also whether or not the mortgage itself provides that insurance protection be carried. If it is necessary that this mortgagee be included in the draft it will also be necessary that we be furnished with proper letters of administration, showing the appointment of an administrator, as we note that the mortgage is in favor of an estate."

Replying to this letter, Mr. Woodford wrote the manager of the home office as follows:

"In answer to your inquiry of the 8th, will state that this mortgage mentioned in the claim was made 11 years ago and the heirs of this estate have never had possession of an insurance policy and did not know that it was insured, and as far as the assured knows there is no provision in the mortgage requiring insurance.

"Policy No. 150253 has a mortgage clause attached which I believe would be ample to retire the mortgage if all was destroyed, but the assureds did not want to swear to a misstatement as to the mortgage when making affidavit on the loss claim.

"It will not be necessary for the draft to be made payable jointly to the estate. There was no real estate and the will was never probated.

"They are very good friends and when the mortgage came due they didn't even go to the trouble of making an extension and merely let the old one carry on while the assureds have been making payments and semiannual interest payments.

"You will be perfectly safe from risk by making the loss draft to the assured, Mrs. Maggie Breuninger, only."

Policy No. 150253, mentioned in this letter, covered the cabins. It was for $1,500; the balance due on the mortgage was $2,800; hence, the statement that the policy was sufficient to retire the mortgage was inaccurate.

Upon receiving this letter at the home office the insurer sent its draft for $3,000, payable to Mrs. Breuninger alone. Mr. Woodford delivered the draft to Mrs. Breuninger. She also carried an insurance policy for $1,000 on the contents of the building, and a draft for that was given to her at the same time. She deposited the $1,000 draft to her own account in the Guaranty State Bank, but caused the draft for $3,000 to be deposited in another bank in her son's account. Then at her request the son wrote plaintiffs that

his father and mother were desirous of meeting them, with the ·object of reaching some sort of settlement of the mortgage in question; that his father and mother wished him to sit in at the meeting, which he would like to have at his office, at a named building, some morning the next week, and asked to be informed what day they would reach there. We pass by the evidence tending to show that plaintiffs undertook to arrange for this meeting, but were unsuccessful for the reason that the son left town on business and was gone for a week or more. In the meantime Mrs. Breuninger obtained the money from her son's account and took it, in cash, to one of the cabins on the mortgaged premises, where she was then living. Plaintiffs soon learned this and promptly brought this action. At the trial Mrs. Breuninger testified in substance that she did this so the money would not be tied up and because she wanted to use it for purposes other than to pay plaintiffs. She further testified that all of it had been used for such other purposes.

In this court counsel for the appellant, Mrs. Breuninger, concedes the rule to be that where a mortgage provides the mortgagor shall keep the premises insured for the benefit of the mortgagee, and in fulfillment of this covenant the mortgagor takes the insurance in his own name—which policy is not assigned to or made payable to the mortgagee—in the event of a loss the mortgagee has an equitable lien upon the proceeds of the policy. It was so held in *Chipman v. Carroll*, 53 Kan. 163, 35 Pac. 1109. Other authorities are to the same effect. See 26 C. J. 442; 19 R. C. L. 406. *Butson v. Misz.*, 81 Or. 607, 160 Pac. 530; *Bank v. Bank*, 197 N. C. 68, 147 S. E. 691; *Kirkpatrick v. Great American Insurance Co.* (Tex. Civ. App.), 299 S. W. 943; *N. W. F. & M. Ins. Co. v. N. Y. Life Ins. Co.*, 238 Ky 229, 37 S. W. 2d 67; *Cook v. Commellini*, 196 Wash. 125, 82 P. 2d 143; *Pearson Mfg. Co. v. Pittsburgh S. Co.*, 309 Pa. 340, 163 Atl. 680, 94 A. L. R. 1382; and authorities cited therein.

But it is argued this principle should not be applied here because of waiver, estoppel and laches. The trial court heard the evidence relating to those matters and held against appellant. We see nothing in the evidence which requires a contrary holding. We deem it unnecessary to state all the details of the evidence which could be said to bear upon those questions. We have considered all such evidence, as obviously the trial court did, and our judgment accords with that of the trial court.

On behalf of the insurer, as appellant, a similar argument is made

respecting waiver, estoppel and laches. What we have said heretofore respecting these matters applies equally to this appellant.

The insurer refers to the language of the mortgage respecting insurance and argues that what plaintiffs did here was to constitute Mrs. Breuninger their agent for the purpose of collecting this insurance; hence, that since she did collect it, plaintiffs cannot ask the insurer to pay it a second time. We think this point is not well taken. The clause in the mortgage authorized the holder of the note and mortgage to hold the insurance policy as collateral security for the debt, "and the person or persons so holding" such policy, in the event of a loss, could collect the moneys payable thereon and apply the same to the payment of the note, or elect to have the buildings repaired or renewed. Plaintiffs were not required to hold the insurance policy; they might deliver it to the mortgagor "and require the collection of the same, and payment made of the proceeds" as though they had made the collection. In either event the payment was to be applied upon the note, unless there was an election to repair or to rebuild, and here there was none. Plaintiffs were entitled to have the sum paid under the policy applied upon the note. The insurer was bound to know that, if it knew of the clause in the mortgage, or under the evidence was bound to have known it. So we may go directly to the evidence of what the insurer knew about the mortgage and the provision therein respecting insurance. When the two policies were written in 1934, and the new policies were written in 1937, a mortgage clause was attached to one of them and not to the other. The insured buildings were all on the same mortgaged premises, which the insurer knew, or could have known by the exercise of reasonable business prudence on the part of its agent. When there were two losses under the policy covering the cabins the proof of loss in each case showed the mortgage on the property to the estate of M. E. McFadden, and the checks in payment were made accordingly and were endorsed by plaintiffs. When the two losses occurred under the policy covering the residence, the proof of loss in each instance showed a mortgage to the estate of M. E. McFadden, just as they had shown under the other policy. In this respect losses under the two policies were treated alike. All of the proofs went to the home office of insurer; hence it cannot plead ignorance of their contents. The check for the first loss under the policy on the residence was made to Mrs. Breuninger alone. There is no evidence in the record as to how that happened to be

done. The amount was not large, $52.50, and the evidence is that the money was used to repair the roof, which had been damaged by hail; hence, it was put to a use proper under insurance clause of the mortgage. When the proof of loss of the destruction of the residence was received at the home office of the insurer its manager took steps, which if followed up fairly and intelligently, would have protected the insurer and plaintiffs. He wrote to Woodford asking to be advised, among other things, "whether or not the mortgage itself provides that insurance protection be carried." Obviously this was deemed needed material information. This information was readily accessible to Woodford. He made no intelligent effort to get it. He replied with a letter, inaccurate in part and apparently written to cause his superior officer to believe the insurer would be "perfectly safe from risk by making the loss draft to the assured, Mrs. Maggie Breuninger only." So, the insurer knowing its agent had not furnished material information requested, took "the risk" of paying to Mrs. Breuninger only.

The trial court was not requested to and did not make conclusions of fact and of law, but did file a written opinion, in which was stated:

"My reason for judgment against the defendant the North River Insurance Company is that the evidence fairly shows that at the time this insurance money was paid to Maggie Breuninger the company knew, or had knowledge of facts which put it on inquiry as to the rights of the plaintiffs in this insurance by reason of the insurance clause in the mortgage.

"On July 23, 1937, policy 150252, which covers the dwelling involved in this case, was written by Mr. Woodford, the agent of the defendant insurance company, and policy 150253, covering the nine cottages, was written by Mr. Woodford on August 1, 1937. Policy 150252 contained no reference to a mortgage in favor of the M. E. McFadden estate, while policy 150253 did contain a standard mortgage clause in favor of the estate of M. E. McFadden. Maggie Breuninger made proof of loss to the company under both policy 150252 and policy 150253. In the proof of loss under policy 150252, and under the heading 'Coverage,' Maggie Breuninger stated:

" '$3,000 on 1 story, composition roof, frame dwelling situated: 5-acre tract in NE ¼ of sec. 36, twp. 13, rge. 35, Shawnee county, Kansas, city of Topeka, Kansas, M/C to McFadden Estate.' (Defendant's exhibit 5.)

"Any insurance man, and nearly everyone else, knows that 'M/C' written in relation to fire, wind or hail insurance means 'Mortgage Clause' and knows that mortgage clauses do not refer to the language of a mortgage, but refer to a content of an insurance policy, and the insurance company knew when it received this proof of loss that Maggie Breuninger believed that policy 150252 contained a mortgage clause and that she believed that 150252 was for the protection of the interest of the owner of the mortgage, the McFadden estate.

Furthermore, I believe that the company knew that the dwelling and the cottages were on the same real estate and were a part of that real estate; that the company knew that there was a mortgage on this real estate which covered both the dwelling and the cottages; that the company knew that it paid losses on the cottages under policies 150253 and 15071 because the mortgage contained a provision for insurance on the structures on this real estate for the benefit of the mortgagee.

"If the company did not actually know of the insurance clause to the mortgage, in my judgment the above facts were sufficient to put it on inquiry as to the interest of the McFadden estate in and to the insurance on the dwelling. It did institute an inquiry and start an investigation as to the interest of the mortgagee by the letter of August 8, 1938, to its agent, Mr. Woodford, who, in reality, made no real investigation as to the interest of the mortgagee and the plaintiffs, and his report of August 13, 1938, to his company was no answer to the company's inquiry as to whether 'the mortgage itself provides that insurance protection be carried.' The gist of his report upon the inquiry of the company was that Maggie Breuninger told him that she didn't think the mortgage contained an insurance clause.

"Having such knowledge of the interest of the McFadden estate and the plaintiffs in the insurance on the dwelling, the company had no right to pay the insurance to Maggie Breuninger, even though policy 150252 contained no mortgage clause, and I do not believe that the conduct of the plaintiffs before and after the fire constitutes any negligence or laches which would preclude their recovery against the defendant the North River Insurance Company."

The insurer's complaint that it will have to pay the policy twice is overcome, or at least lessened, by the judgment over against Mrs. Breuninger, granted the insurer at its request.

The rule of law which gives the mortgagee an equitable lien on the proceeds of the insurance policy, as against the mortgagor, is equally effective against the insurer, if the action of the mortgagee is brought before payment is made under the policy. (*Stearns v. Quincy Insurance Company*, 124 Mass. 61.) When the action is not brought until after such payment has been made, the question whether the insurer can be held depends upon the facts relating to knowledge or notice to the insurer of the rights of the mortgagee. See authorities hereinbefore cited. Under the facts here disclosed, and applying principles of equity thereto, we think there was no error in the judgment as it relates to the insurer.

The judgment of the trial court is affirmed.