No. 40,886

MILTON DREYER, *Appellee*, v. JAMES E. SILER and AUDREY SILER, Partners d/b/a AMERICAN SAND AND MATERIAL COMPANY, *Appellants*.

(308 P. 2d 127)

Opinion filed March 9, 1957.

*Blake A. Williamson*, of Kansas City, argued the cause, and *John J. Bukaty*, *James K. Cubbison*, and *Lee Vaughan*, all of Kansas City, were with him on the briefs for the appellants.

*James H. Barnes*, of Kansas City, argued the cause, and *Donald H. Corson*, of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This is an appeal from an order of the trial court permanently enjoining defendants from removing sand from the Kansas

River above a specified point. The facts pertinent to the issues involved are as follows: The appellee is an individual doing business as Dreyer Sand Company, and will be hereafter referred to as plaintiff. The appellants are partners doing business as American Sand and Material Company, and will be referred to as defendants. Both are engaged in sand pumping operations on the Kansas River in Wyandotte County. Defendants' plant is located on the south bank of the Kansas River. Plaintiff's plant is located upstream from defendants' on the north bank of the river. The rights of the parties are governed by their contracts with the state. The sand from navigable, or other rivers owned by the state, is the property of the state, and the authority for its removal from such rivers is governed by the Laws of 1913, ch. 259, as amended by G. S. 1949, Chapter 71.

G. S. 1949, 71-101, provides that from and after the taking effect of the act (April 30, 1913), it shall be unlawful for any person, partnership or corporation to take from within or beneath the bed of any navigable river or any other river which is the property of the state any sand lying in the bed of any such river, *except in accordance with the act.*

Section 71-102 provides the authority for the consent of the removal of sand from the navigable rivers of this state was vested in the state board of administration. This board was given authority to enter into contracts specifying the terms and conditions for the removal of sand and to make rules and regulations governing the same. The authority granted the board of administration under the mentioned section was later transferred to the director of purchases of the state department of administration, effective July 1, 1953. (G. S. 1955 Supp., 75-3751[2].)

The rights of both parties to take the sand from the Kansas River were based on contracts pursuant to section 71-101 *et seq.* Defendants' contract was dated June 3, 1937, and plaintiff's contract, August 8, 1938. The contracts were identical so far as pertinent to the issues involved in this case. They provided for a royalty payment to the state, keeping of proper records for inspection and, among other provisions, each sand company agreed to be bound by all existing and future regulations of the board of administration, determining locations at which, or terms and conditions under which sand may be removed from a river and all existing or future regulations by statutes or statutory authority, and provided that the contract might be revoked at any time either sand company violated any of the regulations aforementioned.

Plaintiff and defendants operated for a number of years in their original locations without trouble. Eventually, operators in the vicinity began to experience a shortage of sand due to the drouth and low water conditions. As a result, defendants were forced to dredge further upstream in order to reach sand, as early as 1949. Both plants were destroyed in the flood of 1951. Shortly before the flood, the board of administration adopted rules and regulations relative to taking sand from navigable river beds. These rules were filed with the revisor of statutes (G. S. 1949, 77-410), and became effective July 14, 1952. Those pertinent hereto are as follows:

"44-2-2. Contractee agrees to comply with all existing or future resolutions determining locations, and to notify said Board and obtain permission as to location of new site, as it is necessary for Board to consider the wishes of City, County, Waterway and Highway Engineers as well as the Cities, Counties, and Drainage Districts."

"44-2-6. Contractee shall not remove sand at a place within a distance of 1,500 feet above the location of the nearest plant or structure thereto erected and maintained for that purpose."

Subsequent to the flood, plaintiff rebuilt its plant at the same location. Defendants, by letter of July 18, 1952, advised the board of administration of their intention to relocate their plant, and asked permission for such action. A representative of the board checked the matter, but no action was taken either approving or disapproving permission for defendants to relocate. Without further action, defendants rebuilt their plant and located their tipple approximately 1,000 feet upstream from its original site, directly across from plaintiff. In September, 1954, plaintiff notified the director of purchases, to whom authority had been transferred, complaining that defendants were crowding him with their pumping operations. The director of purchases made an investigation, and hearings were had wherein both plaintiff and defendants appeared. As a result of the hearings, the director of purchases issued a cease and desist order, dated May 12, 1955, prohibiting defendants from removing sand upstream above a line running north and south across the river and through the center of plaintiff's plant as it was originally established. No subsequent action was taken by defendants on that order. They ignored the cease and desist order and continued to pump sand within the territory allowed plaintiff under the contract and order.

On the facts related and others presented, the trial court concluded as a matter of law that the rights of plaintiff and defendants

to take sand from the Kansas River were to be determined by their respective contracts with the state and the applicable statutes, rules and regulations; that the rules and regulations adopted by the board of administration were valid and binding, and governed the rights of the parties; that defendants were taking sand upstream from the line described in the order of the director of purchases, dated May 12, 1955, within a distance of 1,500 feet above plaintiff's plant, in violation of Rule 44-2-6; that the director of purchases had the authority to make the order requiring defendants to desist from violating the mentioned rule; that such order was not unreasonable, arbitrary or capricious; that at the present rate of pumping, all available sand would soon be exhausted, and entered judgment accordingly, from which defendants appeal.

Defendants first contend that plaintiff had no right to maintain this action for injunctive relief, and that the action could be maintained only by the attorney general in behalf of the state. Plaintiff was not seeking an injunction because of alleged damages to any public property. The record discloses that defendants moved their plant across the river from plaintiff without permission from the board of administration (71-102), and began pumping sand from the area allotted to plaintiff. The trial court found that at the present rate of pumping, all sand available to plaintiff and defendants, above the line established by the director of purchases in his order, would soon be exhausted. The action of defendants, if allowed to continue, would eventually lead to closing plaintiff's plant.

Where a private citizen is likely to be injured in some special manner or whose situation is peculiarly affected by the exercise of usurped authority, he may maintain an action for injunctive relief. Having suffered substantial financial injury from the wrongful acts of defendants, plaintiff had a right to maintain an action for injunctive relief to restrain the conduct of defendants in violation of the statute, and rules and regulations of the properly constituted board. (*Wichita Transportation Co. v. Peoples Taxicab Co.*, 140 Kan. 40, 34 P. 2d 550.)

The acts of defendants did not affect the general public. The only one who sustained damage by reason of defendants' acts was the plaintiff. We stated in *State, ex rel., v. Mills*, 171 Kan. 397, 233 P. 2d 720, that in the absence of statute, the attorney general has no authority in the name of the state to assume the burden of

conducting an action in behalf of a private individual. (See, also, *State, ex rel., v. Barnes*, 171 Kan. 491, 233 P. 2d 724.) The instant action was properly brought by plaintiff.

Defendants dispute the authority of the director of purchases, successor to the board of administration, to make orders concerning the removal of sand from the river, and contend that under G. S. 1949, 82a-301, this authority is vested in the chief engineer of the division of water resources. Such a contention completely ignores the legislative mandate expressed in the "Sand and Gravel Act" (ch. 71), and is a misconstruction of the "Waters and Watercourses Act," "Obstructions in Streams" (ch. 82a, art. 3). Chapter 71 is entitled "Sand and Gravel," and by its terms provides that it shall be unlawful to take any sand from the bed of any navigable river, *except in accordance with this act.* (71-101.) Thus, the statute specifically covers the taking of sand and the manner and conditions under which it may be taken. (71-102.) On the other hand, Chapter 82a, entitled "Waters and Watercourses," is a general statute covering only water and rights incident thereto. The obvious legislative intent in Chapter 82a was to regulate rights to the water. Section 82a-301, relied on by defendants, is applicable to obstructions in streams, and provides that it shall be unlawful for any person to construct any dam or other water obstruction, or in any manner change or diminish the course, current or cross section of any stream without the consent, in writing, of the chief engineer of the division of water resources. There is nothing in the mentioned section providing that the chief engineer approve any contract with the state for the removal of sand from a navigable stream where the same does not constitute an obstruction, or change or diminish the course, current or cross section of any stream. Following the general rule that a statute pertaining to a specific thing takes precedence over a general statute which might be construed to relate to it, we hold that G. S. 1949, Chapter 71, is applicable to the specific circumstances to which it relates, notwithstanding the provisions of Section 82a-301, *et seq.* (*Wulf v. Fitzpatrick*, 124 Kan. 642, 646, 261 Pac. 838; *Talbott v. Nibert*, 167 Kan. 138, 150, 206 P. 2d 131.) It follows that the power to issue a cease and desist order in the instant case was exclusively within the authority of the director of purchases under Chapter 71.

Defendants also contend that the cease and desist order of May 12, 1955, issued by the director of purchases, was discriminatory, un-

reasonable and arbitrary. After hearing the entire case, the trial court concluded as a matter of law that the action of the director of purchases in issuing the mentioned order, and in refusing to entertain the request of defendants for a cease and desist order against plaintiff, was not unreasonable, arbitrary or capricious. We have reviewed the record and find no evidence which would justify a reversal of the trial court's conclusions.

Other matters presented by the defendants have been examined and found to be immaterial in view of the conclusions reached, or are without sufficient merit to justify a reversal.

The judgment of the trial court is affirmed.