No. 55,905

STATE FARM FIRE and CASUALTY COMPANY, *Appellant/Cross Appellee,* v. BYRON T. LIGGETT and LORRIETA A. LIGGETT, *Appellees/Cross-Appellants,* and SECURITY STATE BANK OF GREAT BEND, KANSAS, *Appellees.*

(689 P.2d 1187)

Opinion filed October 26, 1984.

*Lee Turner,* of Turner and Boisseau, Chartered, of Great Bend, argued the cause, and *Casey R. Law,* of the same firm, was with him on the briefs for appellant/cross-appellee.

*Donald E. Shultz,* of Shultz & Associates, P.A., of Dodge City, argued the cause and was on the briefs for appellees/cross-appellants Byron T. Liggett and Lorrieta A. Liggett.

*Greg L. Bauer,* of McPherson, Bauer & Pike, Chartered, of Great Bend, argued the cause and was on the brief for appellee Security State Bank of Great Bend, Kansas.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the plaintiff, State Farm Fire and Casualty Company, from a judgment against it in this declaratory judgment action and in favor of the defendants, Byron T. Liggett and Lorrieta A. Liggett, and Security State Bank of Great Bend, Kansas, following a six-week jury trial in the District Court of Barton County. We will state the issues raised as we discuss them later in this opinion.

Since State Farm does not challenge the sufficiency of the evidence to support the verdict and judgment, we need not state the facts in great detail. In the latter part of 1980, Dr. Byron Liggett and his wife, Lorrieta, purchased from Dr. Louis Graves a large suburban home located on a twenty-three acre tract of land west of Great Bend. The purchase price was $200,000. Colonial Savings and Loan Association held the first mortgage, Security State Bank of Great Bend held the second mortgage, and the seller, Dr. Graves, a third mortgage. The sale was closed on December 19, 1980, and the Liggetts began moving some of their personal property into the home. Dr. Graves vacated the premises before the first of the year, and in January the Liggetts completed their move. Mrs. Liggett contacted Dave Bair, local agent for State Farm, who had handled the Liggetts' insurance for some years. State Farm issued its policy, providing $220,000 coverage on the dwelling.

The Liggetts had occupied their new home for just over a month when, in the early morning hours of February 1, 1981, the house and contents were totally destroyed by fire. Arson was suspected, with Dr. and Mrs. Liggett being the prime suspects. No criminal prosecution, however, was ever commenced. State Farm refused to pay and instead brought this declaratory judgment action, seeking to have the policy declared void. Joined as

defendants were the Liggetts, Colonial Savings, Security State Bank, and Dr. and Mrs. Graves. (Colonial Savings and Dr. and Mrs. Graves are not parties to this appeal.) State Farm claimed that the Liggetts had given inaccurate material information in their application, had misrepresented the extent of their loss, had breached the contract of insurance, and had caused the loss "by their deliberate act, design and/or procurement of the burning of their dwelling and contents therein."

Dr. and Mrs. Liggett answered and counterclaimed. They sought to enforce the policy and to recover the amount of their loss, which they claimed was $418,000. By separate tort counterclaims, they sought actual and punitive damages of some $25 million for bad faith, outrage, and invasion of privacy. The latter was subdivided into claims for intrusion on seclusion, placing the Liggetts before the public in a false light, and publicizing private matters of a kind highly offensive.

Security State Bank also answered and counterclaimed. It was not named in the policy under the loss payable clause, but by counterclaim it alleged that as a mortgagee it had an interest in the property and was entitled to the policy proceeds as its interest may appear. Security State also claimed that it would have been listed in the loss payable clause but for the failure of Dave Bair, State Farm's agent who wrote the policy. Security State also filed a cross-claim against the Liggetts, seeking in the alternative to recover from them.

The Liggetts were represented initially by Michael Holland; later he withdrew and other attorneys—Camilla Klein Haviland and Lelyn Braun—undertook the representation. Others were consulted. Present counsel were employed twenty days before trial. The discovery in this case was exhaustive. It included twenty-nine depositions taken by the plaintiff and eight by the Liggetts. Throughout the proceedings before trial, there were many detailed interrogatories, requests for production, motions, oral arguments before the trial court, and many briefs submitted. The district court clerk's file comprises eight volumes.

The case went to trial on May 17, 1983. Over forty witnesses testified and almost 200 exhibits were offered in evidence. The trial, as we have noted, lasted for six weeks. The trial transcript is over 4,000 pages long. The trial court struck the Liggetts' bad faith counterclaim, based upon *Spencer v. Aetna Life & Casualty*

*Ins. Co.,* 227 Kan. 914, 611 P.2d 149 (1980). The trial court entered judgment for Security State against State Farm at the close of State Farm's evidence. The remaining issues were submitted to the jury, which returned a verdict for the Liggetts on their policy counterclaim. It awarded them $220,000 for the loss of their residence, $75,500 for loss of personal property, $22,500 for loss of use, $6,900 for debris removal, and $750 for damage to trees, shrubs and other plants, for a total of $325,650. The jury denied relief on the tort counterclaims.

The trial court entered judgment on the verdict, and also allowed attorney fees. The judge specifically found that K.S.A. 40-908 is the applicable statute and that K.S.A. 40-256 is not applicable. He allowed to Security State Bank attorney fees of $17,929, and to Dr. and Mrs. Liggett attorney fees of $119,998.95.

Nothing would be gained by detailing the evidence, which was abundant but sharply conflicting. By its verdict, the jury has resolved the fact issues, totally rejecting State Farm's version. We now turn to the issues raised on appeal.

Appellant first contends that the trial court abused its discretion and committed prejudicial error in permitting the Liggetts to call witnesses and introduce evidence not disclosed as required by the pretrial order. That order, entered orally on February 7, 1983, but not filed until April 19, 1983, required the parties to submit lists of witnesses and exhibits by April 1, 1983. The Liggetts were without counsel at the time of pretrial, and did not retain counsel until after the April 1 deadline. On May 9, 1983, approximately two weeks after being retained, counsel for the Liggetts filed a list of thirty-five witnesses and a list of some forty-nine exhibits. The one witness permitted to testify on behalf of the Liggetts who was not included in the list was Maggie Lee Rinehardt. Ms. Rinehardt, a newspaper editor, testified only of the newsworthiness of the suit filed by State Farm against the Liggetts. This testimony was relevant only to the "false light" counterclaim upon which the jury denied relief.

Appellant also complains of the testimony of Dr. W. C. Niederee. The doctor's testimony, including cross-examination, covers less than five pages in the record. He had been acquainted with Dr. Liggett sixteen years, had observed Dr. Liggett making his rounds at the medical center, found his demeanor appropriate to the situation, had consulted him as a

physician, and thought his care and treatment most appropriate and helpful. Like that of Ms. Rinehardt, Dr. Niederee's testimony was relevant only as to the tort counterclaims. The third defense witness to which State Farm objected was Dr. Ronald L. Wells, who was the expert witness for the Liggetts. Counsel for State Farm had apparently not known of the witness prior to the filing of the list of witnesses on May 9. The trial court granted leave to the plaintiff to depose the witness before he testified and plaintiff took his depositions in two three-hour evening sessions, while the trial was in progress. Dr. Wells was the Liggetts' only expert witness as to the origin of the fire. State Farm, on the other hand, called a number of expert witnesses, only one of whom was deposed by the Liggetts prior to trial.

One of the exhibits about which plaintiff complains was an invoice for a chair and ottoman, showing the original purchase price to be $269.90. The Liggetts had claimed $200 for the loss of those items. The other exhibits to which plaintiff objected were a group of photographs of the concrete floor and walls after the fire, taken at the direction of Dr. Liggett. These were disclosed to plaintiff's counsel at the commencement of the trial, and were listed as "photographs of the fire scene" in the Liggetts' list of exhibits. These are similar to many of the photographs offered and received in evidence on behalf of the plaintiff. Not only were many similar photographs in evidence, but pieces of the concrete were also before the jury. Also, we note that these photographs were available when plaintiff's principal expert was called in rebuttal.

A pretrial order under K.S.A. 60-216 controls the future course of the action "unless modified at the trial to prevent manifest injustice." We have held that this portion of the statute reposes large discretionary power in the trial court. *Frevele v. McAloon,* 222 Kan. 295, 298, 564 P.2d 508 (1977). The admission of exhibits not previously disclosed or the admission of the testimony of witnesses not previously disclosed is discretionary with the trial court. Discretion is abused only when no reasonable man would take the view adopted by the trial court. *Vickers v. City of Kansas City,* 216 Kan. 84, Syl. ¶ 5, 531 P.2d 113 (1975). The exercise of judicial discretion requires that a judge have proper regard for what is just and fair under the existing circumstances, and that he not act in an arbitrary fashion or unreasonable

manner. *Tyler v. Cowen Construction, Inc.,* 216 Kan. 401, Syl. ¶ 3, 532 P.2d 1276 (1975); *Jenkins v. Arnold,* 223 Kan. 298, 299, 573 P.2d 1013 (1978).

All but one of the witnesses were disclosed prior to trial. The exhibits were all listed and disclosed prior to trial. The single expert for the Liggetts was obviously retained after trial counsel was retained, and State Farm was given a fair opportunity to take the witness's deposition before he testified. Under the circumstances of this trial, we hold the trial judge did not abuse his discretion. We find no reversible error.

State Farm next contends that the trial court erred in admitting certain evidence in support of the Liggetts' counterclaims. State Farm claims that the Liggetts' counterclaims were really disguised malicious prosecution claims and thus much of the evidence offered in support of them was inadmissible. No such objection was made at the trial level and the counterclaims were quite distinguishable from malicious prosecution claims. Appellant complains of evidence to show that much publicity would follow a suit such as this one. The evidence was relevant to the invasion of privacy counterclaim and we find no error in its admission.

State Farm contends that much of the testimony of Michael Holland and Richard Shaw concerning the possible motives of State Farm in bringing this action were really in support of a malicious prosecution claim. The testimony, however, appears relevant to the outrage and invasion of privacy claims and we find no error in the admission of this testimony. Appellant also complains of certain remarks of opposing counsel. As to the first two, there were no contemporaneous objections. As to the final remark, counsel for State Farm objected and the trial court sustained the objection and, in effect, directed counsel for the Liggetts to refrain from further comment in that vein. The remark had no relevance and was improper; but it was clearly a minor incident, insufficient to result in substantial prejudice, and any error was cured by the prompt ruling of the trial court. The case was ably tried, argued and presented to the jury by competent and aggressive counsel. Viewing these remarks from the perspective of the entire six-week trial, they were insignificant and did not prevent the appellant from having a fair trial. See *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, 581

P.2d 372 (1978); *Merando v. A. T. & S. F. Rly. Co.*, 232 Kan. 404, 656 P.2d 154 (1982). We find no prejudicial or reversible error.

State Farm next contends that the trial court erred in granting a directed verdict in favor of Security State Bank at the close of plaintiff's evidence. The court's order was included in a journal entry filed May 27, 1983. Judgment was entered for Security State Bank and against State Farm for $44,840.49 plus interest. There is no dispute that Security State Bank was the holder of a mortgage on the dwelling which burned; that under the terms of that mortgage the Liggetts, who assumed the mortgage, were required to insure the property for the protection of the mortgagee; that the Liggetts secured sufficient insurance, being the policy at issue; and that Security State was not listed in the loss payable clause or otherwise in that policy. Further, there is no dispute as to the amount of the judgment. The Liggetts have prevailed upon their policy counterclaim against State Farm. Security State Bank, under our law, is entitled to the protection required in the mortgage and provided by the policy, and is entitled to an equitable lien upon the policy proceeds. In *Robinson v. Breuninger*, 152 Kan. 644, 648, 107 P.2d 688 (1940), we said:

"[W]here a mortgage [on real estate] provides the mortgagor shall keep the premises insured for the benefit of the mortgagee, and in fulfillment of this covenant the mortgagor takes the insurance in his own name—which policy is not assigned to or made payable to the mortgagee—in the event of a loss the mortgagee has an equitable lien upon the proceeds of the policy."

This is the general rule. See 55 Am. Jur. 2d, Mortgages § 278; Annot., 92 A.L.R. 559.

Security State Bank, even though not named in the policy, is entitled to share in the policy proceeds to the extent of its interest. Its judgment is, of course, to be carved out of the judgment of the policyholders, the Liggetts. While the trial court perhaps entered the judgment prematurely and based upon reasoning other than that upon which we rely, we find the judgment proper. The judgment of a trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *Carpenter v. Riley*, 234 Kan. 758, Syl. ¶ 5, 675 P.2d 900 (1984); *Farmers State Bank v. Cooper*, 227 Kan. 547, Syl. ¶ 10, 608 P.2d 929 (1980); *Belger Cartage Serv., Inc. v. Holland Constr. Co.*,

224 Kan. 320, Syl. ¶ 7, 582 P.2d 1111 (1978); *Crow v. City of Wichita,* 222 Kan. 322, Syl. ¶ 1, 566 P.2d 1 (1977).

As its fourth and final point on appeal, State Farm contends that the trial judge erred in awarding attorney fees to Security State, and erred in the amounts of attorney fees it awarded both to the Bank and to the Liggetts. We begin consideration of this issue by considering two statutes, K.S.A. 40-908 and K.S.A. 40-256. They read:

"40-908. **Attorney fees in certain actions.** That in all actions now pending, or hereafter commenced in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made by such insurance company before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

"40-256. **Attorney fees in actions on insurance policies; exception.** That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201, and including in addition thereto any fraternal benefit society and any reciprocal or interinsurance exchange on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made by such insurance company, society or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

As we noted earlier in this opinion, the trial judge found that K.S.A. 40-908 was applicable and controlling on the fee issue, and that K.S.A. 40-256 was not. We agree. State Farm argues that there is clearly an implicit conflict between those statutes and that the earlier statute, K.S.A. 40-908, was repealed by implication by the enactment of K.S.A. 40-256 in 1931. Cited in support of this argument is *Smart v. Hardware Dealers Mutual Fire Insurance Co.,* 181 F. Supp. 575 (D. Kan. 1960), where Judge Arthur J. Stanley, Jr., so held. The following year, however, this court unanimously disagreed. In *Ferrellgas Corporation v. Phoenix Ins. Co.,* 187 Kan. 530, 358 P.2d 786 (1961), we said:

"It is to be noticed that section 40-908 has been the law of this state for many

years, having been first enacted in somewhat different form in Ch. 102, Laws of 1893. We do not think that the enactment of section 40-256 can be presumed to have shown a desire upon the part of the legislature to change the established policy of the state. Especially, is this true when both statutes may easily be construed to be operative side by side. If the policy is one insuring property as provided in the old statute, the insurance company must pay attorney fees as provided therein. If the judgment is as to any other type of policy, then the insurance company may govern its liability under the newer statute.

"Counsel has directed our attention to the case of *Smart v. Hardware Dealers Mutual Fire Insurance Co.,* 181 F. Supp. 575, in which the learned judge of the United States District Court for the District of Kansas held that section 40-256 repealed by implication the provisions of section 40-908. It is to be noted the judge expressed doubt about his decision. In our view, the cases cited by the court found that not only was the same field covered by the two statutes, but the provisions of the newer act were absolutely *repugnant* to the provisions of the older act. Where that is true, the older act must be held to be repealed. But as explained above, the two acts involved in this case are not actually repugnant to each other but each may be effective. In view of the fact that repeals by implication are never favored, and further because of the rule that a specific statute will be favored over a general statute, *Dreyer v. Siler,* 180 Kan. 765, 308 P.2d 127; *Ehrsam v. Borgen,* 185 Kan. 776, 347 P.2d 260, we are constrained to disagree with the learned judge." 187 Kan. at 534-35.

We adhere to our opinion in *Ferrellgas.*

State Farm argues that the statute should be narrowly construed, so as to eliminate the allowance of fees for the policyholder when the insurer contests claims in good faith. Such a holding would write into the statute language which is not there; this we decline to do. Similarly, appellant argues that the purpose of K.S.A. 40-908 is to benefit homeowners, and that the statute should not be extended to benefit commercial entities such as Security State Bank. Again, there is nothing in the statutory language which suggests that it should be so limited. "Plaintiff," as used in the statute, includes corporate as well as non-corporate parties.

Additionally, State Farm argues that the Bank was not an insured under the terms of the policy, and that its action was not an action on the policy. In support of this argument it cites *Boyer v. Hail Insurance Co.,* 86 Kan. 442, 121 Pac. 329 (1912), and *Marshel Investments, Inc. v. Cohen,* 6 Kan. App. 2d 672, 634 P.2d 133 (1981). Both, however, were actions for failure to procure insurance and are thus dissimilar to the Bank's claim in this case, and unpersuasive.

Under the circumstances of this case, however, the Bank's claim against the insurance carrier was derivative, at least until

the claim of the policyholders was defeated. The Liggetts did not sit idly by and leave it up to the Bank to pursue the insurance carrier; instead, they actively asserted their rights under the policy. The Bank as mortgagee had an equitable lien on the policy proceeds, as we pointed out earlier, and the Bank's interests were being furthered by the policyholders. The Bank was not required, on its own, to enforce the policy. The Liggetts were attempting to do that, for their own benefit and, indirectly, for the benefit of the Bank. The Bank was not a named insured and we conclude that under the facts of this case the Bank is not entitled under the statute to an attorney fee. We hold that the Bank's request for attorney fees should be disallowed, and the order of the trial court allowing attorney fees to the Bank should be reversed.

We turn now to the amount of the attorney fees awarded to the Liggetts. The fee allowed is not simply an award for the services of present counsel, but is for the total obligation of the Liggetts to attorneys who appeared of record and represented them in this case up to and including trial. The property insured was out of the ordinary: a large and expensive dwelling, unique in its construction. Though the extent of the furnishings was hotly contested, the jury found that the contents were of substantial value. This case, from the day of its filing to the present, has been one of constant and vigorous activity. The statute, K.S.A. 40-908, is a part of the insurance contract. It mandates the allowance of a reasonable attorney fee to the successful parties. The trial judge heard extensive evidence as to the value and extent of the legal work involved, the time counsel had spent, the issues, and the skill required. Additionally, the same judge had "lived" with the case during the two years from its filing until the return of the verdict and the entry of judgment. While the fee is large, so were the amounts of money involved. The litigation was protracted, the discovery extended, the trial lengthy and difficult. Many complicated legal issues were presented. Skilled counsel spent many hours over a period of two years in preparation and trial.

As we said in *Lattner v. Federal Union Ins. Co.,* 160 Kan. 472, 480-81, 163 P.2d 389 (1945):

"The purpose of the statute allowing an attorney fee in insurance cases is not to penalize an insurance company for making what it deems to be a bona fide defense to an action to recover on an insurance policy, but to permit the allowance of a fair and reasonable compensation to the assured's attorney in the

event, after having been compelled to sue on his policy, he is successful in that effort."

The fixing of fair and reasonable attorney fees is the duty of the trial judge under K.S.A. 40-908. In so doing, the trial judge must exercise sound judicial discretion. We recently reviewed the rules relating to the fixing of attorney fees and the review on appeal of orders allowing attorney fees. In *Hall v. Hamilton*, 233 Kan. 880, 886, 667 P.2d 350 (1983), we said:

"We have held many times that, 'The reasonable value of attorneys' fees rests within the sound judicial discretion of the trial court and its determination will not be disturbed in the absence of an abuse of discretion.' *Buchanan v.Employers Mutual Liability Ins. Co.*, 201 Kan. 666, Syl. ¶ 10, 443 P.2d 681 (1968); *Brown v. Continental Casualty Co.*, 209 Kan. 632, 641, 498 P.2d 26 (1972). Trial courts have often been held to be experts on the subject of the value of legal services, and the judge may apply his or her own knowledge gained from professional experience in determining the value of the legal services rendered. *City of Wichita v. Chapman*, 214 Kan. 575, Syl. ¶ 6, 521 P.2d 589 (1974). Syllabus ¶ 7 of that opinion is also particularly applicable. It reads:

'The circumstances to be considered in determining the amount of a reasonable attorney fee are the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney and the results secured.' " 233 Kan. at 886.

Upon thorough review of the proceedings below, the issues raised, the volume of documents introduced at trial, the length of the trial, the extent of discovery prior to trial, the difficulty of the issues and the skill of counsel, the results obtained, and the various factors to which reference is made in *Hall*, we find that the trial judge did not abuse his discretion in the amount of the allowance of attorney fees to the Liggetts. We so hold. Additionally, counsel for the Liggetts have requested the allowance of attorney fees for work done in preparing and arguing this appeal. Under K.S.A. 40-908, such an award is mandatory. The amount of such fee will be fixed by an appropriate order at the conclusion of this appeal.

The issue raised in the cross-appeal is whether the trial court erred in dismissing the Liggetts' bad faith counterclaim. In *Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980), a unanimous opinion, we held that the tort of bad faith is not recognized in Kansas. We adhere to that opinion.

Appellees now attempt to distinguish their counterclaim from the "bad faith" claim asserted in *Spencer*. Such distinction was not argued to the trial court; instead, the trial court was urged to overrule *Spencer*. The trial court quite properly declined, and followed *Spencer*. So do we. The learned trial judge did not err in dismissing the bad faith counterclaim.

The judgment of the trial court awarding attorney fees to Security State Bank is reversed; in all other respects, the judgment is affirmed.