**Virginia K. WEATHERS, Plaintiff,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, et al., Defendants.**

No. 87–2557–O.

United States District Court, D. Kansas.

Oct. 18, 1991.

---

Pedro L. Irigonegaray, Irigonegaray & Associates, Topeka, Kan., for plaintiff Virginia K. Weathers.

N. Jack Brown, Boddington & Brown, Chtd., Kansas City, Kan., Kent M. Bevan, Dysart, Taylor, Penner, Lay & Lewandowski, Kansas City, Mo., for defendant American Family Mut. Ins.

Mark S. Braun, Office of Atty. Gen., Topeka, Kan., for defendant Richard J. Blevins.

Wilburn Dillon, Jr., Bennett, Dillon & Callahan, Topeka, Kan., for defendant Zenith Electronic Corp.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This case was tried to a jury beginning April 8, 1991, until June 21, 1991. The jury returned a verdict in favor of plaintiff on all of her claims against defendant American Family Mutual Insurance Company ("AFM").[1]

Several matters remain for the court's consideration. The court must determine the amount of punitive damages to be awarded on plaintiff's malicious prosecution claim against AFM pursuant to K.S.A. 60–3701. The court must also decide whether the damages awarded by the jury with respect to plaintiff's malicious prosecution claim must be reduced pursuant to K.S.A. 60–19a01. Additionally, pursuant to the requirements set forth in K.S.A. 40–908, the court must determine the appropriate amount of attorney's fees to be awarded plaintiff with respect to her breach of contract claim against AFM. Lastly, the court must resolve certain miscellaneous matters necessary for entry of final judgment on all claims.

### I. Malicious prosecution— punitive damages

■ The jury found in favor of plaintiff, and against AFM, on plaintiff's claim of malicious prosecution and awarded plaintiff $1,150,000.00 in actual damages. The jury also found by clear and convincing evidence that the conduct of AFM was such that plaintiff was entitled to punitive damages on her malicious prosecution claim. Accordingly, pursuant to the provisions of K.S.A. 60–3701, the court held a hearing on July 25, 1991, to determine the amount of punitive damages that should be awarded to plaintiff. After carefully considering the seven factors set forth in section 60–3701(b), the court finds that plaintiff should be awarded $1,250,000.00 as punitive damages on her claim of malicious prosecution.

### II. Malicious prosecution— actual damages

Included in the jury's award of $1,150,-000.00 in actual damages on plaintiff's malicious prosecution claim was an award of $990,000.00 for emotional distress. Defendant AFM now argues that this amount should be reduced to $250,000.00 pursuant to K.S.A. 60–19a01. Plaintiff opposes this reduction on several grounds.

K.S.A. 60–19a01 states, in pertinent part:
(a) As used in this section, "personal injury" means any action for damages for personal injury or death, except for medical malpractice liability actions.
(b) In any personal injury action, the total amount recoverable by each party from all defendants for all claims for pain and suffering shall not exceed a sum total of $250,000.

Although there is little case law construing section 60–19a01, the Kansas Supreme Court has discussed the history of the statute in passing on its constitutionality. In *Samsel v. Wheeler Transport Services,* 246 Kan. 336, 789 P.2d 541 (1990), the court

---

1. Specifically, the jury found against AFM on the following claims: (1) breach of contract; (2) outrage; and (3) malicious prosecution. (Plaintiff voluntarily dismissed her fourth claim against AFM, trespass, prior to the case being submitted to the jury). The jury found against plaintiff on her claims against defendants Richard Blevins and Zenith Electronics Corporation.

was asked to determine whether section 60–19a01 was violative of sections 5 and 18 of the Kansas Bill of Rights. The court reviewed the history of the liability insurance and tort systems that led to the enactment of section 60–19a01. *Samsel*, 246 Kan. at 338–40, 789 P.2d 541. Specifically, the court noted that the malpractice insurance crises in the 1970's and early 1980's resulted in the enactment of various types of tort reform by Kansas and virtually every other state. *Id.* at 339, 789 P.2d 541. Initially, the Kansas legislature's actions were focused almost exclusively on medical malpractice actions. *Id.* at 339–340, 789 P.2d 541. This focus was later expanded with the enactment of section 60–19a01, which refers to "personal injury" actions. *Id.* at 346, 789 P.2d 541.

■■■ Although the court did not expressly discuss the scope of section 60–19a01 in *Samsel*, the opinion does suggest that the court would limit application of the statute to negligence actions. Throughout the opinion are numerous references to "negligence," "negligent act," "negligent tortfeasor," and "negligence actions." *Id.* at 354, 355, 358, 361, 364, 365, 366, 368, 369, 789 P.2d 541. These references, read in light of the court's discussion of the history of the statute, lead us to the inevitable conclusion that section 60–19a01 was not intended to apply to cases in which the tortfeasor's actions have gone beyond negligence. Because insurance coverage is simply not available for intentional torts, application of section 60–19a01 in intentional tort cases would do nothing to further the legislature's intention of easing insurance rates and ensuring the continued availability of liability insurance. Similarly, application of section 60–19a01 in such cases would do nothing to speed or ensure recovery by victims of intentional torts. Aside from these factors, the court finds nothing in the language of the statute or in the *Samsel* opinion to indicate that the Kansas legislature intended to deny full recovery to victims of intentional torts. Accordingly, the court concludes that section 60–19a01 is inapplicable to plaintiff's malicious prosecution claim.[2]

■■■ Even assuming, *arguendo*, that intentional torts are included within the scope of section 60–19a01, the court would conclude that the statute is inapplicable to the instant case. Subsection (b) of the statute refers to damages for "pain and suffering". K.S.A. 60–19a01(b). Although this term is not defined in the statute, the court agrees with plaintiff that the term "refers to the misery associated with physical injury and not to the emotional distress experienced by plaintiff as a result of malicious prosecution."

### III.  Attorney's fees

Plaintiff has requested attorney's fees pursuant to K.S.A. 40–908.[3] Both parties agree that the statute mandates an award of attorney's fees in this case and that such award is applicable only to plaintiff's breach of contract claim against AFM. The parties disagree, however, as to the amount which should be awarded.

Plaintiff originally submitted an itemization of fees totaling $868,893.63 and requested an increase of that amount to $1,350,000.00. She has since modified her itemization and reduced her request to approximately $674,539.37. Plaintiff continues, however, to seek an enhancement.

In contrast, defendant AFM suggests two alternative fee awards. First, AFM

---

**2.** AFM has also argued that section 60–19a01 is applicable to plaintiff's outrage claim. For the reasons already discussed, the court rejects this assertion.

**3.** K.S.A. 40–908 provides:

That in all actions now pending, or hereafter commenced in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made by such insurance company before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed.

(Emphasis in original).

urges the court to award plaintiff $94,-536.00, an amount approximately equal to 50% of the total damages awarded plaintiff on her breach of contract claim. AFM argues that this amount would be consistent with what plaintiff's attorneys would have received under their contingency fee agreement with plaintiff. Alternatively, AFM urges the court to award plaintiff $217,223.25. AFM argues that this amount, which approximates 25% of plaintiff's original itemization request, would adequately compensate her for attorneys' fees incurred with respect to the breach of contract claim.[4]

■ The court rejects the fee award proposed by the plaintiff. Plaintiff concedes that her itemization of fees was not prepared at the time the work was performed, but instead was reconstructed after the conclusion of the trial. Although this procedure does not preclude the court from making an award, *Carter v. Sedgwick Co., Kan.*, 929 F.2d 1501, 1506 (10th Cir.1991), it does make a review of the items on a "line-by-line" basis extremely difficult. *See Ramos v. Lamm*, 713 F.2d 546, 553 n. 2 (10th Cir.1983) (a district court "should give special scrutiny to any reconstructions or estimates of time expended and make reductions when appropriate."). Even if the court were able to perform a "line-by-line" review of the itemization and accurately determine the number of hours reasonably expended by plaintiff's attorneys in this case, the court would still be left with the almost impossible task of deciding which of those hours were directly attributable to plaintiff's breach of contract claim against AFM.

While the court is of the opinion that AFM's alternative suggestion of awarding plaintiff a percentage of her total itemized fees is feasible and proper in this case, the suggested percentage (25%) and resulting suggested award ($168,634.84) are insufficient to reasonably compensate plaintiff's attorneys with respect to the breach of contract claim. Although the hours expended by plaintiff's attorneys have no doubt been affected by plaintiff's decision to pursue additional claims against AFM, the court does not believe that the itemized fees can simply be divided into four equal portions. This is particularly true because of AFM's defense that the fire in plaintiff's home was intentionally set by plaintiff or her son. Because of this assertion by AFM, plaintiff was forced to demonstrate that the fire was not intentionally set. Thus, a considerable amount of the evidence and a significant number of the witnesses were related to *all* of the claims asserted by plaintiff.

■ To arrive at an appropriate award, the court finds it necessary to strike a reasonable balance between the amount requested by plaintiff and the second alternative award suggested by defendant AFM. In so doing, the court has considered the factors set forth in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983)[5] and *State Farm Fire & Casualty Co. v. Liggett*, 236 Kan. 120, 130, 689 P.2d 1187 (1984).[6] Of the

---

4. AFM suggested these alternative awards prior to plaintiff modifying her itemization. Applying AFM's second suggestion (one-quarter of total itemized fees) to the modified itemization would result in an award of $168,634.84.

5. In *Ramos*, the Tenth Circuit approved and expanded upon the following factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974): (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Ramos*, 713 F.2d at 552–560.

6. In *Liggett*, the Kansas Supreme Court held that the following circumstances should be considered in determining a reasonable fee award: "the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the per-

factors enumerated in each of these cases, the court specifically notes that the instant case has been ongoing for over three years and has required a considerable amount of time and labor on the part of plaintiff's attorneys. In addition to intensive discovery, the trial of this matter reasonably required the complete attention of two attorneys at all times on behalf of the plaintiff.[7] Further, plaintiff's attorneys prevailed on the breach of contract claim despite difficult factual and legal issues presented therein. Finally, the court has considered the fee award approved by the Kansas Supreme Court in *Liggett. See id.* at 129–130, 689 P.2d 1187 (approving total award of $137,927.95 under similar circumstances). For these reasons, the court finds that an award of $250,000.00 is a reasonable attorneys' fee award with respect to plaintiff's breach of contract claim against defendant AFM.

## IV. Apportionment of damages between plaintiff and Wesley Weathers for loss of dwelling

As an element of damages in plaintiff's breach of contract claim, the jury awarded plaintiff $54,572.00 for loss to her dwelling. Because plaintiff's ex-husband, Wesley A. Weathers, has an interest in the dwelling, the parties have agreed that the damage award must be apportioned between plaintiff and Mr. Weathers. Accordingly, the court hereby adopts the following language proposed by plaintiff and defendant AFM:[8]

For breach of the insurance contract, the jury awarded plaintiff $54,572.00 for loss to dwelling; $82,500.00 for loss to personal property; and $55,000.00 for loss of use, for a total of $192,072.00. The parties

agreed, post-trial, that defendant AFM should be credited with $3,000.00 paid to plaintiff shortly after the fire as an advance on her personal property coverage. Therefore, the court enters judgment against defendant AFM for $189,072.00 in damages on the breach of contract claim. The court further orders that to effectuate the terms of the divorce decree between plaintiff and her former husband, Wesley A. Weathers (entered April 15, 1980, in Shawnee County District Court, Topeka, Kansas, Case No. 79–D–686), from the $54,572.00 awarded for loss to the dwelling, plaintiff shall, upon receipt of payment of the judgment from defendant AFM, pay over to Mr. Weathers the sum of $24,126.98.[9] The court further notes that the award herein made for loss of the dwelling represents the insurance coverage on the dwelling ($110,000.00) less the amount paid by defendant AFM upon plaintiff's mortgage ($55,428.00). Defendant AFM still has a valid lien in that amount against the real property upon which the dwelling was located. Should that property be sold prior to satisfaction of judgment, the lien in favor of defendant AFM will have to be satisfied from the proceeds of such sale in order to convey good title. In that event, defendant AFM will then owe to plaintiff, pursuant to this judgment, the amount of $110,000.00 for loss of dwelling, and from that amount, upon receipt of payment from defendant AFM, plaintiff will remit to Mr. Weathers the sum of $51,840.98.[10]

## V. AFM's other arguments

In briefs filed concerning the issues discussed in this order, AFM has attempted to raise other substantive issues. Upon re-

---

formance of the services; the professional character and standing of the attorney and the results secured." *Liggett,* 236 Kan. at 130, 689 P.2d 1187 (quoting *Hall v. Hamilton,* 233 Kan. 880, 886, 667 P.2d 350 (1983)).

7. The court notes that at all times during trial, defendant AFM was represented by at least two attorneys.

8. The court specifically rejects the language proposed by defendant AFM reducing the $55,000.00 damage award for extra living expenses.

9. This sum was calculated by subtracting from the dwelling award the amount of $6,318.03 paid against the mortgage principal by plaintiff subsequent to the divorce, then dividing the remainder in half pursuant to the divorce decree.

10. The sum to be paid to Mr. Weathers is calculated by subtracting from the $110,000.00 dwelling award the amount of $6,318.03 paid against the mortgage principal by plaintiff subsequent to the divorce, then dividing the remainder in half pursuant to the divorce decree.

view, the court finds that these issues are more properly raised in post-trial motions.

The Clerk is directed to enter judgment on all claims in accordance with the jury's verdict and as supplemented and modified by this Memorandum and Order.

IT IS SO ORDERED.